41 Cal.Rptr.3d 754 (2006)
138 Cal.App.4th 732
Michael HUFF, Plaintiff and Appellant,
v.
Matthew Steven WILKINS, a Minor, etc., et al., Defendants and Respondents.
No. D044895.
Court of Appeal, Fourth District, Division One.
April 14, 2006.
As Modified April 26, 2006.
*756 Nordstrom, Steele, Nicolette and Blythe, Alan K. Nicolette, Francis P. Papica, Los Angeles; Benedon & Serlin, Douglas G. Benedon, Los Angeles, and Gerald M. Serlin, for Plaintiff and Appellant.
Winet, Patrick & Weaver and Catherine A. Gayer, Palm Springs, for Defendants and Respondents.
*755 McCONNELL, P.J.
In Distefano v. Forester (2001) 85 Cal. App.4th 1249, 1254, 102 Cal.Rptr.2d 813 (Distefano), this court held the primary assumption of risk doctrine the Supreme Court articulated in Knight v. Jewett (1992) 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (Knight), applies to the sport of "off-roading." The issue in this case is whether the doctrine bars a tort action *757 arising from an off-roading collision in which the 14-year-old operator of an allterrain vehicle (ATV) was driving in violation of Vehicle Code section 38503, a safety regulation that prohibits a person under 18 years of age from operating an ATV on public land without adult supervision or a prescribed safety training program, and a companion Bureau of Land Management (BLM) safety rule.
We reverse a summary judgment for the defendants. We conclude this violation of safety regulations is not within the range of activities ordinarily involved in the sport of off-roading, and to the extent the violation increased the inherent risk of a collision, the plaintiff did not assume the increased risk merely by participating in the sport. It was the defendants' burden to establish the violation did not increase the inherent risks of the sport of off-roading or was not a proximate cause of the accident, and they failed to meet their burden.

FACTUAL AND PROCEDURAL BACKGROUND
In 2001 Steven Wilkins (Wilkins) bought a Honda 400 EX (Honda) for off-roading use by his son Matthew Wilkins (Matthew), then age 12. The Honda has a 400 cubic centimeter (cc) engine and is capable of reaching a speed of 55 miles per hour.
At the time of purchase, Wilkins received and read an owner's manual for the Honda warning that only persons 16 years of age or older should operate an ATV of more than 90 cc's. Additionally, a sticker on the Honda recommended an operator be at least 16 years of age. The Honda manufacturer offered a safety training course "through the ATV safety institute," but Matthew underwent no formal training. Before Matthew drove the Honda, Wilkins "inspected his riding position to see that he ... could reach all the controls and operate it safely." Also, Wilkins had undergone the ATV safety institute training, and he taught Matthew how to operate the Honda.
On February 22, 2003, Wilkins took Matthew, then 14 years of age, to the Glamis sand dunes, near Brawley in the County of Imperial, to ride the Honda. The area is open desert with sand dunes, uneven surfaces, brush and blind hills, and there are no marked trails or traffic signals. At approximately 7:00 p.m., which was presumably after dark, Wilkins for the first time gave Matthew permission to operate the Honda without adult supervision.
While out of Wilkins's view, Matthew drove the Honda up a blind hill at the same time Huff was approaching the hill on his ATV from the other side. Huff climbed the hill at an angle in an effort to see if another ATV was approaching, and had stopped his vehicle for one or two seconds. The Honda flew over the crest of the hill, and while airborne, collided with Huff. Matthew apologized for the accident and said he was "out of control."
Huff sustained serious injuries, and he sued Matthew and Wilkins for negligent driving and negligent entrustment, respectively.[1] They raised the primary assumption of risk doctrine in their answer, and moved for summary judgment on that ground, arguing that as a legal matter they had no duty of care to Huff. Huff opposed the motion on the ground there are triable issues of fact pertaining to whether the inherent risk of a collision was increased by Matthew's violation of Vehicle Code section 38503, which imposes requirements on ATV drivers under 18 years of age, and a BLM safety rule based on the statute.
*758 The court granted the motion, finding Matthew's conduct "was not totally outside the range of the ordinary activity involved in the sport of ATV riding," and the negligent entrustment theory "must fail in that [such] a cause of action for negligent entrustment [is] predicated upon the negligence of a defendant driver." The court denied Huff's request for leave to amend the complaint to add allegations of reckless or intentional conduct. Judgment for the defendants was entered on September 8, 2004.

DISCUSSION

I

Standard of Review
A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.) A defendant satisfies this burden by showing "`one or more elements of' the `cause of action' in question `cannot be established,' or that `there is a complete defense'" to that cause of action. (Ibid.) If the defendant meets his or her initial burden, "the opposing party is then subjected to a burden of production of his [or her] own to make a prima facie showing of the existence of a triable issue of material fact." (Ibid.) "De novo review is used to determine whether, as a matter of law, summary judgment was appropriately granted." (Camarillo v. Vaage (2003) 105 Cal. App.4th 552, 560, 130 Cal.Rptr.2d 26.)

II

Primary Assumption of Risk

A
"As a general rule, each person has a duty to use ordinary care and `is liable for injuries caused by his [or her] failure to exercise reasonable care in the circumstances.'" (Parsons v. Crown Disposal Co. (1997) 15 Cal.4th 456, 472, 63 Cal.Rptr.2d 291, 936 P.2d 70, citing Rowland v. Christian (1968) 69 Cal.2d 108, 112, 70 Cal.Rptr. 97, 443 P.2d 561; Civ.Code, § 1714.) In the context of active sports, however, the scope of this duty is limited by the assumption of risk doctrine. (Calhoon v. Lewis (2000) 81 Cal.App.4th 108, 115, 96 Cal.Rptr.2d 394.)
In Knight, supra, 3 Cal.4th 296, 11 Cal. Rptr.2d 2, 834 P.2d 696, the Supreme Court considered the proper application of the assumption of risk doctrine in light of its adoption of comparative fault principles in Li v. Yellow Cab Co. (1975) 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226. (Knight, at pp. 299-300, 11 Cal.Rptr.2d 2, 834 P.2d 696.) The court "distinguished between (1) primary assumption of risk  `those instances in which the assumption of risk doctrine embodies a legal conclusion that there is "no duty" on the part of the defendant to protect the plaintiff from a particular risk'  and (2) secondary assumption of risk  `those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty.' [Citation.] Primary assumption of risk, when applicable, completely bars the plaintiff's recovery. [Citation.] The doctrine of secondary assumption of risk, by contrast, `is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties.' [Citation.] Whether primary or secondary assumption of risk applies `turns on whether, in light of the nature of the sporting activity in which defendant and plaintiff were engaged, defendant's conduct *759 breached a legal duty of care to plaintiff.' [Citation.] The test is objective; it `depends on the nature of the sport or activity in question and on the parties' general relationship to the activity' rather than `the particular plaintiff's subjective knowledge and awareness....'" (Cheong v. Antablin (1997) 16 Cal.4th 1063, 1067, 68 Cal.Rptr.2d 859, 946 P.2d 817, citing Knight, supra, at pp. 308, 313-315, 11 Cal. Rptr.2d 2, 834 P.2d 696.)
In Knight, the court held the primary assumption of risk doctrine barred a woman from recovering for personal injuries she sustained in a touch football game. The court concluded "that a participant in an active sport breaches a legal duty of care to other participants  i.e., engages in conduct that properly may subject him or her to financial liability  only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (Knight, supra, 3 Cal.4th at p. 320, 11 Cal.Rptr.2d 2, 834 P.2d 696.)[2]
The Knight court explained that "vigorous participation in [certain] sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct.... [E]ven when a participant's conduct violates a rule of the game and may subject the violator to internal sanctions prescribed by the sport itself, imposition of legal liability for such conduct might well alter fundamentally the nature of the sport by deterring participants from vigorously engaging in activity that falls close to, but on the permissible side of, a prescribed rule." (Knight, supra, 3 Cal.4th at pp. 318-319, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
An activity falls within the primary assumption of risk doctrine if it "`"is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury."'" (Calhoon v. Lewis, supra, 81 Cal.App.4th at p. 115, 96 Cal.Rptr.2d 394; Bjork v. Mason (2000) 77 Cal.App.4th 544, 550, 92 Cal.Rptr.2d 49; Record v. Reason (1999) 73 Cal.App.4th 472, 482, 86 Cal.Rptr.2d 547.) "[I]n various sports, going too fast, making sharp turns, not taking certain precautions, or proceeding beyond one's abilities are actions held not to be totally outside the range of ordinary activities involved in those sports." (Moser v. Ratinoff (2003) 105 Cal.App.4th 1211, 1222, 130 Cal.Rptr.2d 198.) "There is no requirement that athletes be acquainted with each other or join together ... to be considered coparticipants within the meaning of Knight." (Campbell v. Derylo (1999) 75 Cal.App.4th 823, 827, 89 Cal.Rptr.2d 519, fn. 1 (Campbell); Staten v. Superior Court (1996) 45 Cal.App.4th 1628, 1633, 53 Cal.Rptr.2d 657 [figure skater assumes risk of collision with other skaters even when skating solo when "proximity to one another created certain risks of collision"].)
In Distefano, supra, 85 Cal.App.4th at page 1254, 102 Cal.Rptr.2d 813, this court held the sport of off-roading involves inherent risks the participants may be involved in collisions and suffer serious injury or death. We also held that because the plaintiff's complaint did not allege reckless conduct and there was no evidence the defendant intentionally injured the plaintiff "or engaged in conduct that *760 was so reckless as to be totally outside the range of ordinary activity involved in off-roading," the action was barred by the primary assumption of risk doctrine. (Ibid.)
"Knight however does not grant unbridled legal immunity to all defendants participating in sporting activity." (Campbell, supra, 75 Cal.App.4th at p. 827, 89 Cal.Rptr.2d 519.) In Knight, the court held that "[a]lthough defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (Knight, supra, 3 Cal.4th at pp. 315-316, 11 Cal.Rptr.2d 2, 834 P.2d 696.) Courts have held that when the plaintiff claims the defendant's conduct increased the inherent risks of a sport, summary judgment on primary assumption of risk grounds is unavailable unless the defendant disproves the theory or establishes a lack of causation. (See, e.g., Campbell, supra, at p. 830, 89 Cal.Rptr.2d 519; Lowe v. California League of Prof. Baseball (1997) 56 Cal.App.4th 112, 123, 65 Cal. Rptr.2d 105.)

B

1
Huff contends summary judgment was improper because there are triable issues of fact regarding whether Matthew's violation of Vehicle Code section 38503 increased the inherent risks of the sport of off-roading. The statute provides: "No person under the age of 18 years, on and after January 1, 1990, shall operate an [ATV] on public lands of this state unless the person satisfies one of the following conditions: [¶] (a) The person is taking a prescribed safety training course under the direct supervision of a certified [ATV] safety instructor. [¶] (b) The person is under the direct supervision of an adult who has in [his or her] possession an appropriate safety certificate issued by this state, or issued under the authority of another state. [¶] (c) The person has in possession an appropriate safety certificate issued by this state or issued under the authority of another state."
Further, Huff relies on a BLM rule for the Glamis sand dunes designed to promote public safety, which states "[n]o person under the age of 18 shall operate an ATV unless he or she has received the safety course in this state or another state or is under the direct supervision of an adult who has the appropriate safety certification in his or her possession." The rule cites Vehicle Code section 38503.
Huff relies on Freeman v. Hale (1994) 30 Cal.App.4th 1388, 36 Cal.Rptr.2d 418 (Freeman), in which the plaintiff was rendered quadriplegic during a ski trip when another skier, who consumed alcoholic beverages before and during skiing, collided with her. (Id. at p. 1391, 36 Cal.Rptr.2d 418.) The court of appeal reversed a defense summary judgment on the ground of primary assumption of risk, explaining: "We recognize that participants in many sports, including skiing, may foolishly combine the participation in their given sport with the consumption of alcoholic beverages. However, the unfortunate fact that some skiers simultaneously engage in both drinking and skiing does not mean that drinking is an activity ordinarily `involved' in skiing, as that term is used in Knight. ... [C]onduct is within the range of ordinary activity involved in a sport if that conduct cannot be prohibited without deterring vigorous participation in the sport or otherwise fundamentally altering the nature of the sport.
*761 "The consumption of alcoholic beverages could be prohibited during or shortly before skiing without fundamentally altering the nature of the sport. The elimination of alcohol would not deter skiers from accepting the challenges of moguls, fast slopes, deep powder, or tight turns. To the contrary, the absence of alcoholic influence would promote vigorous participation in the sport by permitting skiers to ski to the best of their physical abilities, free of the debilitating effects of alcohol on their judgment, perceptions and reactions. We conclude, therefore, that drinking alcoholic beverages is not an activity within the range of activities `involved' in the sport of skiing, and that the increased risks presented by the consumption of alcohol are not inherent in the sport of skiing.
"In summary, while Hale did not have a duty to avoid an inadvertent collision with Freeman, he did have a duty to avoid increasing the risk of such a collision. [Citation.] He did not establish that, by drinking alcohol while he was skiing, he did not increase that risk. Nor did he establish that his consumption of alcohol was not a proximate cause of the collision. Therefore, Hale did not establish the defense of primary assumption of the risk as to all of the risks [that] may have contributed to Freeman's injuries." (Freeman, supra, 30 Cal.App.4th at pp. 1396-1397, 36 Cal.Rptr.2d 418, fn. omitted.)
Huff also relies on Campbell, supra, 75 Cal.App.4th 823, 89 Cal.Rptr.2d 519, in which the plaintiff was injured on a ski slope by a runaway snowboard. The defendant had violated a county ordinance and a skier responsibility code posted at the ski resort requiring a snowboarder to wear a retention strap, which attaches to the board's bindings and is secured to the snowboarder's leg or boot. (Id. at p. 825, 89 Cal.Rptr.2d 519.) The trial court granted the defendant summary judgment, finding the risk of being injured by a runaway snowboard was inherent in the sport and there was no evidence of recklessness. (Id. at p. 826, 89 Cal.Rptr.2d 519.) Citing Freeman, the Court of Appeal reversed the judgment on the ground that by violating the safety regulations and not using a retention strap, the "defendant unnecessarily increased the danger that his snowboard might escape his control and injure other participants such as plaintiff. The absence of a retention strap could therefore constitute conduct not inherent to the sport which increased the risk of injury." (Campbell, supra, at p. 829, 89 Cal.Rptr.2d 519.) The court also explained that the defendant "also did not establish as a matter of law that the lack of a retention strap was not a proximate cause of plaintiff's injuries." (Id. at p. 830, 89 Cal.Rptr.2d 519.)
We find Freeman and Campbell analogous and persuasive, and conclude summary judgment was improper here.
The legislative history of Assembly Bill No. 781, under which Vehicle Code section 38503 was promulgated, shows it was intended to address serious injuries caused by youthful ATV operators.[3] A 1987 statement explains: "During the course of the past two years, the [federal] Consumer Products Safety Commission [Safety Commission] has conducted a study of the safety of [ATV's]. The Commission was concerned over what they felt was a high rate of injury and fatal accidents, particularly with younger users of ATV[']s. Although the study is still ongoing, one conclusion which has been reached *762 by all participants is that there needs to be a better system of making sure that riders, particularly youthful riders, are better trained in the safe use of the vehicles. [¶] Although the manufacturers of these products have developed some very good safety training programs, very few people are taking advantage of them. Parents ... are too often content to give their youngsters a few minutes of training and then turn them loose." (Assem. Com. on Transportation, statement on Assem. Bill No. 781 (1987-1988 Reg. Sess.) April 1, 1987, p. 1.) The Safety Commission "requested the states to respond to this situation by enacting mandatory training programs for youngsters." (Ibid.)
Vehicle Code section 38503 and the BLM safety rule, which is based on the statute, demonstrate a recognition that the training of youthful ATV operators reduces the risk of serious injury to themselves and other operators they encounter. (See Campbell v. Derylo, supra, 75 Cal. App.4th at p. 829, 89 Cal.Rptr.2d 519.)
The imposition of liability for the violation of reasonable safety regulations pertaining to ATV operators under the age of 18 would not chill vigorous participation in the sport of off-roading. For instance, compliance with Vehicle Code section 38503 and the BLM safety rule does not preclude young operators of ATV's from fully participating in the "`[t]hrills, chills, and spills'" of the sport after undergoing the requisite safety training. (Distefano, supra, 85 Cal.App.4th at p. 1262, 102 Cal. Rptr.2d 813.) Moreover, the imposition of liability on teenage ATV operators for violating the safety regulations would not otherwise alter the fundamental nature of the sport. (Freeman, supra, 30 Cal.App.4th at p. 1394, 36 Cal.Rptr.2d 418.) Indeed, drivers over the age of 18 would presumably favor the imposition of such liability, as it would likely encourage younger participants to comply with safety regulations and decrease accidents caused by inexperienced operators.
Although a collision between ATV's was an inherent risk of the sport of off-roading, Matthew's failure to comply with the safety regulations was not an inherent risk, for reasons discussed, and to any extent the failure increased the risk of a collision, Huff did not assume the increased risk merely by participating in the sport. (Freeman, supra, 30 Cal.App.4th at pp. 1390, 1395-1397, 36 Cal.Rptr.2d 418.) We reject the notion that the defendants were entitled to summary judgment merely because they showed a collision is an inherent risk of the sport of off-roading. Because the defendants failed to establish the defense of primary assumption of the risk as to all of the risks that may have contributed to Huff's injuries, they are not entitled to summary judgment. (Id. at p. 1397, 36 Cal.Rptr.2d 418.)[4],[5]

*763 2
The defendants claim the only relevant conduct is Matthew's collision with Huff, and not his violation of Vehicle Code section 38503 and the BLM safety rule. That is incorrect, however, as in Freeman, supra, 30 Cal.App.4th 1388, 36 Cal.Rptr.2d 418, the conduct at issue during the court's analysis of the second prong of the duty issue, pertaining to an increase in the inherent risk of a collision, was defendant's consumption of alcohol, and not the inherent risk of a collision. The court concluded the "elimination of alcohol would not deter skiers from accepting the challenges of moguls, fast slopes, deep powder, or tight turns." (Freeman, supra, 30 Cal. App.4th at p. 1396, 36 Cal.Rptr.2d 418; see also Campbell v. Derylo, supra, 75 Cal. App.4th at p. 830, 89 Cal.Rptr.2d 519 [relevant conduct for purposes of determining whether inherent risks of snowboarding were increased was defendant's use of a snowboard without a retention strap required by ordinance]; Lowe v. California League of Prof. Baseball, supra, 56 Cal. App.4th at p. 123, 65 Cal.Rptr.2d 105 [relevant conduct for purposes of determining whether inherent risk of getting struck by a foul ball during a baseball game was increased was distracting behavior of team mascot]; Vine v. Bear Valley Ski Co. (2004) 118 Cal.App.4th 577, 591, 13 Cal. Rptr.3d 370 [relevant conduct for purposes of determining whether inherent risks of snowboarding were increased was design of snowboard jump].)
The defendants also point out that the court in Freeman, liberally construing the plaintiff's evidence in opposition to a summary judgment motion, inferred from expert deposition testimony that drinking alcohol while skiing impairs a skier's judgment. (Freeman, supra, 30 Cal. App.4th at 1396 & fn. 5, 36 Cal.Rptr.2d 418.) Here, in contrast, no expert or other evidence was adduced showing the violation of Vehicle Code section 38503 and the BLM safety rule increased the risk of serious injury inherent in the sport of off-roading. However, it was the defendants' duty to show entitlement to judgment as a matter of law, which included a showing Matthew's violation of Vehicle Code section 38503 and the BLM safety rule did not increase the inherent risks of the sport of off-roading. In Freeman, supra, 30 Cal.App.4th at pages 1396-1397, 36 Cal.Rptr.2d 418, the court concluded the defendant "did not establish that, by drinking alcohol while he was skiing, he did not increase that risk." Here, the defendants did not meet their burden.
Further, the defendants assert that because Huff did not cite Vehicle Code section 38503 or the BLM safety rule in his complaint, and the pleadings delineate the issues on summary judgment, he was precluded from raising violation of the safety provisions in opposition to the summary judgment motion. The defendants, however, rely on Distefano, supra, 85 Cal. App.4th at pages 1266-1267, 102 Cal. Rptr.2d 813, which concerned a negligence per se claim under Evidence Code section 669. This case concerns a claim of ordinary negligence, which may be pleaded in general terms. (Brooks v. E.J. Willig Truck Transp. Co. (1953) 40 Cal.2d 669, 680, 255 P.2d 802; 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 554, p. 644.) *764 In interrogatory responses, Huff notified the defendants of his reliance on Vehicle Code section 38503,[6] and thus they were well aware of his theory.

3
An issue remains regarding the posture of the case on remand.[7] Some courts have held the jury decides whether the defendant's conduct increased the inherent risks of a sport. (See, e.g., Campbell v. Derylo, supra, 75 Cal.App.4th 823, 830, 89 Cal.Rptr.2d 519; Vine v. Bear Valley Ski Co., supra, 118 Cal.App.4th at pp. 592-593 & fn. 4, 13 Cal.Rptr.3d 370; Sanchez v. Hillerich & Bradsby Co. (2002) 104 Cal.App.4th 703, 715, 128 Cal.Rptr.2d 529; Solis v. Kirkwood Resort Co. (2001) 94 Cal.App.4th 354, 365, 114 Cal.Rptr.2d 265.)
Other courts, including this court, have concluded that because the primary assumption of the risk doctrine involves issues of duty, the trial court determines both prongs of the duty analysis. In Huffman v. City of Poway (2000) 84 Cal. App.4th 975, 995, footnote 23, 101 Cal. Rptr.2d 325, we explained that in the first prong, the court decides the inherent risks of a sport without the aid of experts. In the second prong, the court may consider expert evidence in deciding whether a defendant's conduct increased the inherent risks of the sport.
Similarly, in American Golf Corp. v. Superior Court (2000) 79 Cal.App.4th 30, 37, 93 Cal.Rptr.2d 683 the court held the trial court must "decide whether an activity is an active sport, the inherent risks of that sport, and whether the defendant has increased the risks of the activity beyond the risks inherent in the sport. [Citation.] Although the expert may not determine matters that are within the province of the court to decide, expert opinion may inform the court on these questions." (Id. at p. 37, 93 Cal.Rptr.2d 683.)
We conclude it is the trial court's province to determine whether the defendants breached their duty not to increase the inherent risk of a collision, and it should hold a hearing for this purpose before impaneling a jury. The court may rely on expert evidence, and it must decide the issue whether or not the evidence conflicts. If Huff does not show a breach of duty, the primary assumption of risk doctrine bars this action. If he does show a breach of duty, the action proceeds to a jury trial under a secondary assumption of the risk theory in which causation issues are tried.

III

Denial of Leave To Amend
Three days before the hearing on the summary judgment motion was scheduled, Huff moved ex parte for an order shortening the time for a motion for leave to amend his complaint to allege defendants' recklessness or intentional conduct, and to continue the summary judgment hearing. Huff explained he sought leave to amend "[i]n an abundance of caution." The court denied ex parte relief and proceeded with the summary judgment motion. Huff then filed a noticed motion for leave to amend, and the court denied the motion. Huff contends the court abused its discretion, although he now raises only the issue of recklessness.
"`[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in *765 such matters will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.]'" (Record v. Reason, supra, 73 Cal.App.4th 472, 486, 86 Cal.Rptr.2d 547; Code Civ. Proc., § 473, subd. (a)(1).) Courts must apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial, when no prejudice is shown to the adverse party. (Atkinson v. Elk Corp. (2003) 109 Cal.App.4th 739, 761, 135 Cal.Rptr.2d 433.) However, "`even if a good amendment is proposed in proper form, unwarranted delay in presenting it may  of itself  be a valid reason for denial.'" (Record v. Reason, at p. 486, 86 Cal.Rptr.2d 547.)
We find no abuse of discretion. Huff conceded he had no new facts on which to base a claim for reckless conduct, and he failed to offer any explanation for his delay in seeking leave to amend. Further, the facts as developed in the summary judgment motion do not show recklessness.[8] Leave to amend is properly denied when the facts are undisputed and as a substantive matter no liability exists under the plaintiff's new theory. (Edwards v. Superior Court (2001) 93 Cal. App.4th 172, 180, 112 Cal.Rptr.2d 838.)

DISPOSITION
The judgment is reversed and the matter is remanded to the trial court for further proceedings in accordance with this opinion. Huff is entitled to costs on appeal.
WE CONCUR: HALLER and AARON, JJ.
NOTES
[1] Because Wilkins's liability for negligent entrustment is predicated on Matthew's liability for violating the safety regulations, we address only the latter issue.
[2] Knight was a plurality opinion, but a unanimous court later "restated the basic principles of Knight's lead opinion as the controlling law." (Cheong, supra, 16 Cal.4th at p. 1067, 68 Cal.Rptr.2d 859, 946 P.2d 817, citing Neighbarger v. Irwin Industries, Inc. (1994) 8 Cal.4th 532, 537-538, 541, 34 Cal. Rptr.2d 630, 882 P.2d 347.)
[3] We grant Huff's request that we take judicial notice of this legislative history. (Evid. Code, § 452.)
[4] In Distefano, this court held the defendant's alleged violation of Vehicle Code sections 38305 (basic speed law provision applicable to ATV operation) and 38316 (reckless driving of ATV), read in conjunction with Evidence Code section 669, did not modify the Knight rule even if the elements of negligence per se were established. (Distefano, supra, 85 Cal. App.4th at pp. 1272-1277, 102 Cal.Rptr.2d 813.) We explained that "fast and aggressive driving is inevitable in the sport of off-roading, and imposition on Forester of tort liability on the facts of the instant case would chill or deter vigorous participation in the sport." (Id. at p. 1277, 102 Cal.Rptr.2d 813.) In contrast, imposition of liability here based on a statutory violation would not deter vigorous participation in the sport. (See Campbell v. Derylo, supra, 75 Cal.App.4th at p. 829, 89 Cal.Rptr.2d 519.)

Huff does not raise a negligence per se argument, and thus we are not required to determine whether Evidence Code section 669 in conjunction with Vehicle Code section 38503 or the BLM safety rule establishes an independent standard of care that overrides the primary assumption of risk doctrine. (See Campbell v. Derylo, supra, 75 Cal.App.4th at p. 829, fn. 3, 89 Cal.Rptr.2d 519.)
[5] Huff also asserts Matthew's use of an ATV with more power than the Honda manufacturer recommended for a 14-year-old raises a triable issue of fact regarding the increase of inherent risks of off-roading. Because summary judgment was improper on other grounds we are not required to reach this issue.
[6] Interrogatory responses erroneously cited Vehicle Code section 38504.
[7] We sought supplemental briefing on this issue, and we have taken the parties' responses into consideration.
[8] As explained in the Restatement Second of Torts: "Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man [or woman]." (Rest.2d Torts, § 500, com. g, p. 590.)