Filed 9/28/23  Rodriguez v. City of San Jose CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JACINTO RODRIGUEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SAN JOSE,<br><br>    Defendant and Respondent. | H050312<br>(Santa Clara County<br>Super. Ct. No. 18CV325784) |

While performing repair work at the Happy Hollow Zoo (Zoo) for damages caused by severe flooding of a nearby creek, plaintiff Jacinto Rodriguez slipped and suffered a cut to his lower leg which, a few days later, became seriously infected, requiring his hospitalization.  Rodriguez sued the City of San Jose (City), which owns the Zoo, alleging causes of action for dangerous condition of public property and public nuisance.

The City successfully moved for summary judgment, on the ground that it was immune from suit pursuant to Government Code section 855.4.[1]  At the hearing on that motion, Rodriguez asked for leave to amend his complaint, but the trial court denied that request, citing delay.

On appeal, Rodriguez argues the trial court abused its discretion in denying his request for leave to amend his pleading and further argues that the trial court erred in granting the motion for summary judgment.

---

[1] Unspecified statutory references are to the Government Code.

We conclude that the trial court did not err in denying Rodriguez's request for leave to amend his complaint or in granting City's motion for summary judgment on the ground that it is immune pursuant to section 855.4. Accordingly, we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

In February 2017, an atmospheric river storm system hit California. Due to the sustained heavy rainfall, the spillway of the Anderson Dam overtopped, causing widespread flooding along Coyote Creek in San Jose. The Zoo was among the areas flooded. The City, County of Santa Clara, and State of California declared states of emergency due to the flooding and associated storm damage.

The flooding damaged perimeter fencing along the Zoo's lower level. Rodriguez's company, Security Alert Systems of California, LLC (SAS), had a contract with the City[2] to provide security services. Pursuant to that contract, the City initiated a work order for SAS on February 23, 2017, to repair the Zoo's fencing and alarm system on the lower level.

Rodriguez began his repair work at the Zoo on February 28, 2017, then returned to the site and worked from March 2, 2017 through March 8, 2017. The lower level of the Zoo was at least partially unimproved, with bushes, tall grass, and large trees, along with a paved service area, barns, buildings, and animal enclosures. The City did not control the manner of SAS's work, nor did it provide Rodriguez with any instructions on how to perform his repairs. While at the Zoo, Rodriguez observed volunteers cleaning the property and saw that they were wearing protective gear. Rodriguez did not ask why they were wearing protective gear and he did not obtain any protective equipment for himself.

---

[2] SAS entered into an open purchase order for security services with the City in 2003. In the period leading up to February 2017, Rodriguez had performed work at the Zoo on many occasions.

2

Rodriguez alleges that, while working at the Zoo sometime between March 3 and March 8, 2017, he somehow got a cut on his lower leg. He awoke on March 9, 2017, in severe pain and had to be hospitalized. On March 18, 2017, Rodriguez learned that he had contracted streptococcal and other infections which he asserts were caused by his exposure to the flood-borne debris and other hazardous materials deposited in the lower level of the Zoo.

### B. Procedure

#### 1. Operative pleading

Rodriguez's operative first amended complaint (FAC) states two causes of action: (1) dangerous condition of public property (§ 835 et seq.); and (2) public nuisance (Civ. Code, §§ 3479, 3480).

In his FAC, Rodriguez alleged that the City "knew of the existence of hazardous waste materials at the Zoo prior to the date that it initiated the work order with SAS," "provided its volunteers with protective gear and safety equipment, yet, when it retained [Rodriguez] to perform work at the Zoo," failed to warn him about the hazardous waste or provide him with safety equipment or protective gear. Rodriguez further alleged that the "presence of hazardous waste at the Zoo created a reasonably foreseeable risk that [he] would suffer the injury that he incurred."

The City's demurrer to the FAC was overruled, and in October 2019, this court summarily denied the City's petition for writ of mandamus or, in the alternative, prohibition.

#### 2. City's motion for summary judgment

On January 20, 2022, the City moved for summary judgment on the ground, among others, that it was immune from suit pursuant to section 855.4.[3] After the matter

---

[3] The City also argued that it was immune from suit under the Emergency Services Act (§ 8655); the injury resulted from a natural condition of unimproved public property (continued)

was briefed and argued, the trial court issued a 13-page written order granting the City's motion for summary judgment, finding that section 855.4 provides a complete defense to both causes of action.

### 3. Order granting City's motion for summary judgment

In its order, the trial court noted that City had met its initial burden of showing that it was entitled to immunity under section 855.4 by submitting evidence that its "decision to perform cleanup and repairs at the zoo was clearly a discretionary decision 'to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community.' " The court noted that its "analysis" of the motion "is largely governed by the decision in *City of Los Angeles v. Superior Court* (*Wong*) (2021) 62 Cal.App.5th 129 [(*Wong*)]." According to the trial court, *Wong* "ruled that by its plain language § 855.4(a) 'immunizes any decision relating to the control of the communication of disease that is the result of the discretion vested in the public entity. Such a decision is immune, whether or not such discretion was abused. Under subdivision (b), immunity attaches to any act or omission performed while carrying out such a decision, as long as the act or omission was performed with due care.' "

Analogizing the allegations made by the plaintiff in *Wong* to those made by Rodriguez, the court concluded that "City is entitled to complete immunity here . . . [because], like the plaintiff in *Wong*, his operative FAC does not include any specific factual allegations that the City carried out any specific act or omission 'without due care' following the decision to allow him into a potentially contaminated area without protective gear." In his FAC, Rodriguez alleged that he was injured by the City

(§ 831.2); *Privette v. Superior Court* (1993) 5 Cal.4th 689, 693 provides immunity for injury arising out of an independent contractor's negligence; and it owed no duty to Rodriguez under section 835 as it had no notice of the dangerous condition and Rodriguez was an independent contractor. The trial court did not reach any of these alternative grounds for summary judgment in its order.

4

" 'ordering and directing him . . . to immediately begin repairs at the Zoo when they knew, or should have known, that the premises were not safe to occupy, or work in, without appropriate protective clothing.' " Accordingly, the City has immunity under section 855.4, subdivision (a) as Rodriguez alleges his injury was caused by "the general decision to allow [him] into an unsafe area without protection to do repair work" as opposed to "any particular 'act or omission' following that decision carried out without due care."

The trial court rejected Rodriguez's contention that the City's act of issuing a work order to repair the alarm system at the Zoo avoided the immunity afforded by section 855.4. In the court's view, this act was "plainly not itself a 'decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community.' " The court continued that, "[w]hether the City had discretion to choose anyone other than SAS" for the work "has nothing to do with the determination that the City's decision to clean up and repair the Zoo after a flood . . . or whether the decision to allow [Rodriguez] to do repairs without protective gear" fell within the immunity provided under section 855.4, subdivision (a).[4]

The trial court also denied Rodriguez's request for leave to amend, first made at the hearing on the motion for summary judgment, on the ground that the request was unduly delayed and it would be unfair to the City to permit amendment in the face of a meritorious summary judgment motion. The court entered judgment in the City's favor on June 17, 2022.

Rodriguez timely appealed.

---

[4] The trial court's analysis focused predominantly on Rodriguez's first cause of action for dangerous condition of public property, noting that because Rodriguez failed to allege any additional "specific facts" to support his second cause of action for public nuisance that cause of action "depends entirely upon the first cause of action for support."

5

## II.  DISCUSSION

### A. *Request for leave to amend*

Rodriguez argues that the trial court abused its discretion in denying his request for leave to amend his complaint.  In his view, though the matter had been pending for three and a half years, much of the delay was caused by the City's pleading challenges and the pandemic, all of which held up discovery.  We disagree.

### 1. *Legal principles and standard of review*

A trial court may allow the amendment of a pleading at any time up to and including trial.  (Code Civ. Proc., §§ 473, subd. (a)(1), 576.)  " ' "[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown.  [Citations.]" ' [Citations.]  Courts must apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings . . . when no prejudice is shown to the adverse party.  [Citation.]  However, ' "even if a good amendment is proposed in proper form, *unwarranted delay* in presenting it may—of itself—be a valid reason for denial." ' " (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746 (*Huff*), italics added.)  "[W]hen a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.' " (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280 (*Falcon*).)  "Thus, appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence . . . ." ' " (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (*Melican*).)

6

Notwithstanding considerations related to unwarranted delay, "[t]he plaintiff has the burden of proving that an amendment would cure the defect [in the pleading]." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.) Moreover, "[l]eave to amend is properly denied when the facts are undisputed and as a substantive matter no liability exists under the plaintiff's new theory." (*Huff, supra*, 138 Cal.App.4th at p. 746.)

The trial court's ruling on a motion to amend a pleading is reviewed under an abuse of discretion standard. (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 135.) Furthermore, we must "begin our analysis mindful that an 'order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 421.)

### 2. Additional background

Rodriguez filed his original complaint in April 2018.

The complaint was served on the City in October 2018. In April 2019, the trial court stayed all proceedings in the case pending a resolution on the City's petition for writ of mandate challenging the order overruling its demurrer to the FAC. The stay was lifted upon this court's summary denial of the City's writ petition in October 2019.

At the hearing on the motion for summary judgment in April 2022, the case was approximately three and a half years old. In response to the court's tentative ruling that the City was immune from suit pursuant to section 855.4, Rodriguez requested an opportunity to amend his pleading to "further allege facts that specify that this [*sic*] failure to act with due care." According to Rodriguez, recent discovery had revealed "new facts" regarding "[t]he City's decision to implement that initial discretionary act to warn and protect all individuals who are coming on-site. . . . [¶] [A]nd then the failure to carry out that discretionary act with due care" as to him.

7

After noting that the case was "four years old," the trial court further commented that Rodriguez "had the right to seek leave to amend the pleadings when you found out these facts[,] [but] [t]hat wasn't done." In its order granting the City's motion for summary judgment, the trial court denied Rodriguez's request for leave to amend his complaint, citing several cases[5] which held that it is unduly prejudicial to grant leave to amend a pleading in response to a summary judgment motion, especially where the plaintiff had prior knowledge of the facts underlying the proposed amendment.

### 3. *No error in denying leave to amend*

In addressing the question of unwarranted delay, Rodriguez explains that he "maintain[ed] a good faith belief, based on the prior overruling of [the City]'s Demurrer and the denial of [the City]'s Writ, that the FAC was adequately plead." We disagree.

Rodriguez's initial complaint was filed in April 2018. City's motion for summary judgment, filed in June 2021, cited the then-recent appellate decision in *Wong*, *supra*, 62 Cal.App.5th 129 which addressed section 855.4 immunity. Rodriguez's opposition, filed nine months later in March 2022, sought to distinguish *Wong* by maintaining that City's acts were ministerial and thus section 855.4 did not apply. Rodriguez further argued that, even if City's acts were discretionary, City was liable for not implementing a discretionary decision with due care under section 855.4, subdivision (b). He also continued to assert that City was liable for his injuries because it decided to warn and protect its *employees and volunteers* entering the property of the dangers posed by the flooding but did not warn or protect him.

However, nowhere in his opposition papers did Rodriguez indicate that he planned to seek leave to amend his complaint to allege: (1) that City decided to warn and protect "all individuals," and not just employees and volunteers, entering the Zoo; and (2) City's

---

[5] The cases cited in the court's order are *Melican*, *supra*, 151 Cal.App.4th 168, *Falcon*, *supra*, 224 Cal.App.4th 1263, and *Payton v. CSI Electrical Contractors, Inc.* (2018) 27 Cal.App.5th 832.

8

failure to warn and protect him constituted its failure to exercise due care in carrying out its discretionary decision regarding controlling the communication of disease. It was only after the trial court provided the parties with its tentative ruling granting City's motion for summary judgment, and only at the hearing on that motion, that Rodriguez first requested an opportunity to amend his complaint. Given that Rodriguez only sought leave to amend months after City moved for summary judgment on the FAC, it would be "patently unfair to allow [Rodriguez] to defeat [City]'s summary judgment motion by allowing [him] to present a 'moving target' unbounded by the pleadings." (*Melican*, *supra*, 151 Cal.App.4th at p. 176.)

Due to Rodriguez's unwarranted delay in seeking leave to amend his complaint, the trial court did not abuse its discretion in denying that request. We now consider whether the trial court erred in granting the motion for summary judgment.

### B. *Motion for summary judgment*

Rodriguez argues the trial court erred in determining that City is immune from suit pursuant to section 855.4 because he submitted evidence showing that the City made a discretionary decision to warn and protect all individuals engaged in cleaning up and making repairs at the Zoo and it did not carry out that decision with due care.[6] We disagree.

#### 1. *Standard of review*

A party may move for summary judgment on the ground that the action has no merit. (Code Civ. Proc., § 437c, subd. (a)(1).) The motion must be granted if there is no triable issue of material fact and if the moving party is entitled to judgment as a matter of law. (*Id.*, subd. (c).) The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the movant] carries [this] burden of production," the burden of production shifts to the

---

[6] This is different than what Rodriguez argued below, which was that City decided to only warn its employees and volunteers entering the property.

opposing party "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.)

"In reviewing a trial court's grant of summary judgment, . . . ' "[w]e take the facts from the record that was before the trial court when it ruled on that motion" ' and ' " ' "review the trial court's decision de novo . . . ." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

### 2. *Governmental immunity and section 855.4*

"[U]nder the [Government Claims Act (GCA)], there is no such thing as common law tort liability for public entities; a public entity is not liable for an injury '[e]xcept as otherwise provided by statute.' (Gov. Code, § 815; see *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.)" (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.) As relevant here, one of the statutory grounds for public entity liability under the GCA is for "injuries caused 'by a dangerous condition of [a public entity's] property' that was created through an employee's negligence. (Gov. Code, § 835; see *id.*, subd. (a).)" (*Ibid.*) However, even where the GCA affords a statutory basis for liability, such liability is " 'subject to any immunity of the public entity provided by statute.' " (*Id*. at p. 804, citing § 815, subd. (b).)

Section 855.4 reads as follows: "(a) Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to

10

promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused. [¶] (b) Neither a public entity nor a public employee is liable for an injury caused by an act or omission in carrying out with due care a decision described in subdivision (a)."

### 3. *Analysis*

In support of its motion for summary judgment, City presented declarations and exhibits from several City employees, including a senior deputy city attorney, a procurement manager responsible for purchase orders issued by City, and the manager of the Zoo. City's evidence showed that its decisions relating to cleaning up the Zoo after the flooding were public health decisions relating to the prevention or control of communication of disease in the community and thus decisions entirely within the City's discretion. For example, City's undisputed material fact No. 8 was that "staff made [protective gear] available to individuals working at the Zoo because the flood waters were visibly dirty. Due to the water's appearance, City staff believed the waters may have potentially contained contaminants." Paragraph 6 of the Zoo's manager's declaration, which is referenced in support of this fact, states that she "advised individuals performing post-flood clean-up work" about the availability of protective gear and that she "ensured that City employees and volunteers were advised that the flood waters were potentially contaminated."

This evidence was sufficient to meet City's initial burden of proof to establish that its decision to undertake cleanup and repairs at the Zoo in the aftermath of the flood was a discretionary decision "to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community" and that it was therefore entitled to immunity under section 855.4. Like the trial court, we are persuaded that City's claim of immunity is

11

supported by the analyses of section 855.4 presented in *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683 (*Wright*) and *Wong*, *supra*, 62 Cal.App.5th 129.[7]

In *Wright*, the plaintiffs sued the City of Los Angeles for dangerous condition of public property and wrongful death after their child died from hantavirus, a respiratory disease spread through contact with infected mouse feces and dried urine, which she contracted while playing in an abandoned building located on city-owned property. (*Wright*, *supra*, 93 Cal.App.4th at pp. 685-686.) The city's demurrer, based on its immunity under section 855.4, was sustained without leave to amend. (*Wright*, at pp. 686-687.)

On appeal, the plaintiffs argued that section 855.4 should be interpreted to only apply to a public entity's response to an outbreak of disease impacting the community at large rather than " 'where a public entity's substandard maintenance of public property is the sole cause in fact of an individual[']s exposure to and contraction of a deadly disease.' " (*Wright*, *supra*, 93 Cal.App.4th at p. 689.) The court rejected that argument, explaining that if section 855.4's immunity were so limited, all " 'public health facilities and all other owners of any public property, improved or unimproved, [could] be sued for failure to adequately keep the facility or unimproved property germ, bacteria and virus-free.' " (*Wright*, at p. 690.) " 'The presence of germs, bacteria and viruses and the like, many of which are microscopic and which may or may not be contained in saliva, animal droppings, or any multitude of other forms, upon the vast public property of this state, cannot . . . be viewed as liability events, without some specifically stated intent of the Legislature.' " (*Ibid.*)

---

[7] We recognize that *Wright* and *Wong* were decided at the pleading stage and did not involve judgments entered following successful motions for summary judgment. Nevertheless, we find their discussion of section 855.4 relevant to our determination of whether immunity applies to the facts set forth in this case.

In *Wong*, *supra*, 62 Cal.App.5th 129, plaintiff alleged that she contracted typhus from her husband, a police officer, who himself contracted the disease from working at a police station which was unsanitary and infested with rats and fleas. (*Id*. at pp. 133-134.) The city, relying on *Wright*, demurred, arguing that under section 855.4, it could not be liable for injuries related to control of disease or lack thereof or for the presence of germs, bacteria, or viruses on publicly-owned property. (*Wong*, at p. 135.) After the trial court overruled the city's demurrer, the Court of Appeal issued a peremptory writ of mandate directing the trial court to vacate its original order and issue a new order sustaining city's demurrer without leave to amend. (*Id*. at pp. 149-150.)

The Court of Appeal examined section 855.4 and noted that, "[b]y its plain language, section 855.4, subdivision (a) immunizes any 'decision' relating to the control of the communication of disease that is 'the result of the discretion vested in the public entity.' Such a 'decision' is immune, 'whether or not such discretion [was] abused.' Under subdivision (b), immunity attaches to any act or omission performed while carrying out such a decision, as long as the act or omission was performed with due care." (*Wong*, *supra*, 62 Cal.App.5th at p. 144.) According to the court, the plaintiff's allegations fell within section 855.4's immunity. She "alleged that the City had actual or constructive notice that the property 'was the subject of a typhus epidemic and that proactive conduct was required in order to ensure safety,' but the City 'permitted the conditions to remain unabated.' Any such 'decision' on the part of the City falls under the immunity in section 855.4, subdivision (a)." (*Wong*, at p. 148.) The plaintiff failed to allege "facts sufficient to demonstrate that the City's actions or omissions do not constitute a 'decision to perform or not perform any act' to 'control[] the communication of disease within the community' which was within 'the discretion vested in' the City." (*Id*. at p. 149.)

The court also rejected plaintiff's argument that the city " 'acted without due care in implementing' its decision" and thus could be liable under section 855.4, subdivision

(b). (*Wong*, *supra*, 62 Cal.App.5th at p. 149.) The court noted that section 855.4, subdivision (b) did not apply because the plaintiff had not "allege[d] facts in her complaint that the City carried out any particular 'act or omission' without due care. To the contrary, she alleged that the decision itself—to not abate the allegedly dangerous condition of the property—was the cause of her injury." (*Wong*, at p. 149.) Like the plaintiff in *Wong*, Rodriguez alleges that he was injured by City's decision to warn employees and volunteers of the dangers, not that it failed to carry out that decision with due care.

Having concluded that City met its initial burden of showing it was entitled to immunity under section 855.4, we now examine whether Rodriguez met his burden to produce evidence which "make[s] a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) We conclude that he failed to do so.

In his opposition, Rodriguez failed to submit any evidence showing that City provided warnings to *all* persons entering the property, let alone all staff and volunteers, about the danger of exposure to hazardous materials and contaminated water and debris. Instead, Rodriguez's evidence indicated that the City cautioned "staff and volunteers" to "avoid[] contact with things, and provided equipment for *people that were directly cleaning up the areas*." (Italics added.) The deposition testimony of City employees submitted by Rodriguez indicates that *some* volunteers and employees were provided Tyvek suits and other protective material while on the site, but that those protective materials were given only to those involved in pressure washing or otherwise directly engaged in the process of cleaning up the Zoo after the flooding.[8] While Rodriguez was

---

[8] City's undisputed material fact No. 10 specifically disclaimed any knowledge, prior to Rodriguez starting his repair work at the Zoo, that any employee or volunteer had become ill after exposure to flood waters. Rodriguez sought to dispute this fact by citing to his own declaration in which he states: "During the time of his recovery from his (continued)

14

expected to be present on the property for his work, he was not tasked with pressure washing, cleaning surfaces, or removing debris. Instead, his tasks were to repair fencing and fix the alarm system, and Rodriguez does not dispute City's undisputed material fact No. 5, which states it did not "provide any instruction or direction on the manner in which" he carried out and completed that work. Consequently, Rodriguez's evidence was insufficient to create a triable issue of material fact as to whether City was immune under section 855.4 for its discretionary decision to protect those performing cleanup at the Zoo.[9]

### III.   DISPOSITION

The judgment is affirmed. City shall recover its costs on appeal.

---

infection, Plaintiff learned that Defendant had known of at least one worker involved in the clean-up of the Zoo that had fallen ill due to exposure from the hazardous waste and contaminants that had been deposited onto the Zoo from the flood waters." City objected to this statement as: (1) lacking foundation (Evid. Code, § 403); (2) speculative (Evid. Code, § 702); (3) hearsay (Evid. Code, § 1200); and (4) irrelevant (Evid. Code, § 350). The trial court did not rule on any of City's objections, citing Code of Civil Procedure section 437c, subdivision (q), for the proposition that it "need rule only on those objections to evidence that it deems material to its disposition of the motion." Assuming this evidence could be considered material, it is not admissible as it consists of hearsay and also lacks foundation. Rodriguez fails to present any deposition testimony or other evidence corroborating his assertion.

[9] City contends that because the parties "fully briefed" several of its other defenses below, this court can and should "affirm the judgment based on any of those defenses." While City may have briefed these other defenses in its points and authorities, it did not reference them in its separate statement of undisputed material facts nor did it cite to evidence supporting those defenses in that document. "As Judge Zebrowski explains, *all* material facts must be set forth in the separate statement. 'This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist*. Both the court and the opposing party are entitled to have all the facts upon which the moving party bases its motion plainly set forth *in the separate statement*.' " (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337.) Based on our disposition, we need not and do not reach these alternative defenses.

15

_____
                                Wilson, J.

WE CONCUR:

_____
         Bamattre-Manoukian, Acting P.J.

_____
                           Danner, J.

*Rodriguez v. City of San Jose*
H050312