Filed 2/15/24  McGill v. Hearthstone CA Properties I CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LOWRI MCGILL,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>HEARTHSTONE CA PROPERTIES I, LLC,<br><br>　　Defendant and Respondent. | H050636<br>(Santa Clara County<br>Super. Ct. No. 18CV338709) |

Appellant Lowri McGill filed a class action complaint for declaratory and injunctive relief against respondent Hearthstone CA Properties I, LLC (Hearthstone). McGill, a former tenant in a residential property owned by Woodstone by Vintage LP (Woodstone), alleges that a late rental fee payment in her lease agreement is illegal and that Hearthstone, by virtue of its limited partnership agreement with Woodstone, is liable to her and other tenants for that unlawful provision. The trial court entered judgment in Hearthstone's favor after granting its motion for summary adjudication and sustaining its demurrer to McGill's remaining cause of action.

On appeal, McGill argues that the trial court erred in granting Hearthstone's motion for summary adjudication of her cause of action for violation of Business and Professions Code section 17200 et seq. (also known as the Unfair Competition Law (UCL)) because: (1) Hearthstone was a direct participant in the unlawful conduct underlying her UCL claim, (2) Hearthstone was Woodstone's agent or alter ego and

therefore liable under the UCL, and (3) Hearthstone could be liable for the acts and omissions of the partnership under Corporations Code section 15904.04. McGill also contends the trial court erred in sustaining Hearthstone's demurrer to her negligence cause of action, and not granting her leave to amend her third amended complaint to state several new causes of action.

As we explain below, we conclude that none of McGill's arguments have merit. We will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The third amended complaint*[1]

In August 2017, McGill entered into a lease agreement for an apartment in a complex owned by Woodstone, located in Lompoc, California. Among the terms of the lease is a clause providing that any late payment of rent is subject to a $50 fee "as a liquidated damage." McGill paid late rent fees on several occasions when she lived at the complex.

In her third amended complaint, filed in Santa Clara County Superior Court, McGill listed two causes of action, as follows: (1) violation of Business and Professions Code section 17200 et seq., and (2) negligence. In support of her UCL cause of action, McGill alleged that the late rent fee is illegal under Civil Code section 1671 and its

---

[1] The procedural history of this case is somewhat unusual. Hearthstone moved for summary adjudication of the UCL cause of action as stated in McGill's *second* amended complaint. However, prior to McGill filing her opposition to Hearthstone's motion, the parties stipulated to her filing a third amended complaint, with the proviso that it would "not affect or impair" the pending summary adjudication motion. The stipulation also provided that it was without prejudice to Hearthstone and Woodstone demurring to the negligence cause of action set forth in the third amended complaint. In accordance with the parties' stipulation, the trial court granted McGill's request for leave to file the third amended complaint and deemed Hearthstone's motion as being directed to the UCL claim in the new pleading. Accordingly, in an effort to streamline the discussion, we will limit our description to the allegations set forth in the third amended complaint.

2

inclusion in her lease agreement is an unfair business practice. As to her negligence cause of action, McGill alleged that Hearthstone had a duty to ensure that the terms of the lease agreement were legal and the inclusion of the illegal late rent fee clause in her lease agreement breached that duty of care.

Specifically, McGill alleged that paragraph 5 of the lease agreement, which imposes the $50 late rent fee, violates Civil Code sections 1671 and 1953. Paragraph 5 of the lease, which was attached as an exhibit to the complaint, reads in pertinent part: "Owner and Residents agree that it is and will be impracticable and extremely difficult to fix the actual damages suffered by Owner in the event Residents make a late payment of rent, or when Residents make a payment that is subsequently dishonored by the bank, and that the below charges represent a reasonable approximation of the damages Owner is likely to suffer from a late or dishonored payment. . . . [¶] . . . If Owner has not received the full rent payment within 2 day(s) after it is due to be received under this Agreement, Residents shall pay a sum of $50.00, as a liquidated damage."

### B. Hearthstone's motion for summary adjudication

Hearthstone moved for summary adjudication of McGill's first cause of action under the UCL. In its separate statement, Hearthstone set forth the following three undisputed material facts: (1) it "did not participate, directly or by aiding and abetting another," in charging the late rent fees set forth in the lease; (2) neither Woodstone nor FPI Management, Inc. (FPI)[2] were Hearthstone's agents with respect to assessing or collecting late rent fees; and (3) neither Woodstone nor FPI were alter egos of Hearthstone.

In support of its motion, Hearthstone submitted declarations from: (1) Socorro Vasquez, executive director of Hearthstone Housing Foundation (HHF), a non-profit

_____

[2] FPI, which is not a party to this appeal, was the property manager for the apartment complex at which McGill was a tenant.

3

corporation as well as the sole member and manager of Hearthstone; and (2) Michael Gancar, manager of Woodstone by Vintage Partners LLC, Woodstone's general partner.[3] In addition, Hearthstone submitted a copy of the First Amended and Restated Agreement of Limited Partnership of Woodstone by Vintage, LP, dated March 1, 2017 (LPA); a copy of the Partnership Management Summary "outlining the various requirements to ensure that Woodstone … maintains its exemption as a low–income housing property[;]" and copies of invoices for services rendered by Hearthstone to Woodstone.

### 1. Evidence relating to the partnership

According to Vasquez, Hearthstone works to "increase the availability of quality affordable rental housing for low-income tenants." To that end, Hearthstone assists the owners of housing projects in "obtain[ing] and maintain[ing] an exemption from property taxation" under applicable state law and regulations. In this case, Woodstone, as an owner of rental property, contracted with Hearthstone to secure a low–income housing tax exemption. The terms and conditions of the agreement between Woodstone and Hearthstone were set forth in the LPA. However, Hearthstone did not review, edit, or approve any of the language included in the lease agreements at the property, nor did it provide any input as to what terms should be included in those agreements. Vasquez stated that Hearthstone never exercised, or attempted to exercise, any control over Woodstone or FPI regarding the lease agreements. With respect to the late rent fee

---

[3] We are concerned here only with Hearthstone CA Properties I, LLC's legal obligations vis-à-vis McGill and other tenants. For the sake of simplicity, we will not further reference either HHF or Woodstone by Vintage Partners LLC in this opinion, instead treating them as part of Hearthstone and Woodstone, respectively. We recognize they are all distinct and separate entities, but those distinctions are irrelevant to our analysis.

4

clause, no person or entity sought Hearthstone's advice or opinions on that subject, nor was Hearthstone involved in charging or collecting late rent fees.[4]

Article 7 of the LPA specifies the scope of the parties' managerial duties and their allocation. Under section 7.1, the general partners "have full, exclusive and complete charge of the management and control of" the partnership with their decisions "made by majority vote." The LPA provides that Woodstone, as administrative general partner (AGP), has 90 votes and Hearthstone, as managing general partner (MGP), has 10 votes.

Section 7.17, subdivision (a), describes Hearthstone's "power and authority" as MGP in pertinent part, as follows: "Except as otherwise set forth in this Agreement, the [MGP], within the authority granted to it under this Agreement, shall have material participation in the control, management and direction of the Partnership's business for the purposes stated in this Section 7.17, and shall manage and control the affairs of the Partnership and use its commercially reasonable efforts to carry out the purpose of the Partnership.[5] … The [MGP] shall apply for, use commercially reasonable efforts to obtain and maintain the Property Tax Exemption for the Project." Section 7.17, subdivision (b) lists Hearthstone's "substantial management duties" as MGP, including "(i) monitor[ing] compliance with all governmental regulations …; [and] [¶] (ii) participat[ing] in hiring and overseeing the work of all persons necessary to provide

---

[4] In his declaration, Gancar (manager at Woodstone) also stated that Hearthstone did not participate in either the decision to include a late rent fee clause in the lease agreement or the collection of rents or late rent fees.

[5] Section 2.4 of the LPA states that the "purpose of the Partnership" is to acquire the land and improvements and "consistent with the charitable purposes of the [MGP], to rehabilitate the Improvements, and maintain, own, operate, lease and otherwise deal with the Project as a low–income rental housing project in accordance with the Project Documents and the provisions of this Agreement."

5

services to the Partnership for the management and operation of [its] business."[6]  The LPA further provides that Hearthstone "may delegate all or any of its Substantial Management Duties to the [AGP] … provided [] such delegation does not excuse the [MGP] from overseeing and supervising on an ongoing basis the activities delegated."

The LPA describes Woodstone's powers to include: (1) "sole authority" to make "all property management decisions including, without limitation, hiring and firing" the property manager (i.e., FPI);  (2) execute all project documents "and any other agreements or instruments of any nature whatsoever … without the signature of the [MGP;]"  and; (3) prepare the annual operating budget, file tax returns, and maintain insurance on the project.

According to Vasquez, Hearthstone performed three of the substantial management duties under the LPA.  Specifically, Hearthstone: (1) monitored compliance with governmental requirements relating to the property tax exemption and low–income housing tax credits, (2) signed the partnership documents related to the tax exemption, and (3) ensured that charitable services or benefits, or information about such services or benefits, were made available to the tenants.  Hearthstone delegated the remaining substantial management duties to Woodstone.

Finally, pursuant to the LPA, Hearthstone was entitled to the following compensation for its services as MGP: (1) a one–time payment of $10,000 upon Woodstone's acquisition of the property; (2) a one–time payment of $3,000 upon Hearthstone filing the initial application for the property tax exemption; and (3) an ongoing annual payment of $7,500 (increasing by 3% per year).  As of the date

---

[6] The LPA lists an additional four substantial management duties, including executing and enforcing the Partnership's contracts, executing and delivering Partnership documents, preparing reports as required by the LPA, and providing "charitable services or benefits" or information regarding same "to the low income housing tenants." (Section 7.17, subds. (b)(iii)–(vi).)

6

Hearthstone's summary adjudication motion was filed, it had received total compensation of $44,477.20 under the LPA. Hearthstone also received a fractional ownership interest of 0.001% in Woodstone but had not received any distributions in connection with this interest.

### 2. Evidence relating to agency and alter ego

Vasquez declared that Woodstone "never represented Hearthstone [] in any dealings with third persons [including the tenants at the property], nor has Hearthstone [] ever authorized any of them to do so." In addition, Hearthstone and Woodstone are separate and distinct entities, though Hearthstone has a 0.0001% equity interest in Woodstone. The remaining equity in Woodstone is owned by other entities, but Hearthstone owns no part of those entities. Hearthstone and Woodstone do not have "common members, managers, shareholders, partners, directors, officers, employees, parent companies, subsidiaries, or affiliated entities." Hearthstone does not exercise control over Woodstone, nor does Woodstone exercise control over Hearthstone.

### C. McGill's opposition to the motion for summary adjudication

In connection with her opposition, McGill submitted her counsel's declaration, which attached several exhibits. The trial court sustained Hearthstone's objections to various statements contained in counsel's declaration, as well as two of the attached exhibits (specifically, Exhibits A and F).[7]

McGill's remaining exhibits consisted of a copy of the lease agreement signed by McGill (Exh. B), a ledger showing McGill paid late rent fees "on repeated occasion[,]

_____

[7] Exhibit A is a printout from a website showing various companies that share a mailing address. Exhibit F is a document entitled "Agreement of Limited Partnership of Woodstone by Vintage, LP, A California Limited Partnership," dated September 15, 2016. In this appeal, McGill does not challenge the trial court's rulings on Hearthstone's evidentiary objections and has therefore forfeited any claim that these rulings are erroneous. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177-1178.)

[*sic*]" (Exh. C), the three day notice to pay rent or quit form notice produced "by Woodstone/FPI when rent is late[,]" (Exh. D), "the FPI tracker" which Woodstone produced to show how it determined the amount of the late rent fee (Exh. E), and a copy of website pages, which appear to have been printed on March 18, 2022, from www.vintagehousing.com and www.kennedywilson.com (Exh. G).

### D. Order granting summary adjudication

Following a hearing, the trial court granted Hearthstone's motion for summary adjudication by written order dated June 21, 2022. The trial court concluded that Hearthstone's evidence met "its initial burden to show that it did not participate in or have unbridled control over the alleged unlawful practice of charging late rent fees." The court found that McGill's contentions that Hearthstone could be liable "for its failure to act and exercise control over what terms were to be included in the tenant leases" and that it "had an affirmative obligation under the law, and under the LPA, to stop the alleged unlawful practice" were "contrary to the weight of legal authority." In addition, the trial court stated that McGill had failed to present evidence raising a triable issue of fact on the question of whether Woodstone and FPI were Hearthstone's agents. As to the issue of alter ego liability, the trial court pointed out that the operative third amended complaint, "filed pursuant to stipulation *two months after this motion [for summary adjudication] was filed*—does not allege that Hearthstone [] is the alter ego of any other entity." (Italics in original.) Finally, the trial court rejected McGill's contention that Hearthstone is liable under Corporations Code section 15904.04, subdivision (a)[8] because, as with her alter ego claim, McGill had failed to allege such liability in her third amended complaint.

---

[8] As the trial court correctly noted, that statute "imposes joint and several liability on general partners of a limited partnership."

## *E. Hearthstone demurs to the negligence cause of action*

Having obtained summary adjudication of McGill's UCL cause of action in the third amended complaint, Hearthstone subsequently demurred to her second cause of action for negligence.

In support of her negligence cause of action, McGill alleged that Hearthstone and the other named defendants: (1) "as owners/operators/managers" of the rental property, had "a duty to assure that the terms of their lease forms were legal[;]" and (2) breached that duty by including a void late rent fee term in the lease forms. McGill further alleged that, because the late rent fee term did not comply with Civil Code section 1671, subdivision (d), it was therefore illegal and void and the defendants' breach of duty constituted "Negligence Per Se." Finally, McGill alleged that she and the putative class members suffered damages by paying the illegal late fees.

In its demurrer, Hearthstone argued that McGill failed to allege sufficient facts to state a cause of action for negligence, specifically to show that it owed her a statutory or common law duty of care.

In her opposition, McGill argued that pursuant to *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383 (*Beasley*), a party may seek monetary relief from a void liquidated damages clause under Civil Code section 1671 and therefore she should be permitted to bring a negligence cause of action under this statute. In addition, McGill argued that, as a result of the "special relationship" between a landlord and a tenant, a tenant may bring a "negligence claim against landlords for the faults of its managers," such as Hearthstone.

In the alternative, McGill requested leave to file a fourth amended complaint. Her proposed pleading restated her UCL (only against Woodstone and HHF) and negligence causes of action and added four new causes of action all of which were based on the allegations regarding late rent fees. The new causes of action were, as follows: (1)

9

violation of Civil Code section 1671; (2) negligent misrepresentation; (3) promissory estoppel; and (4) breach of contract.[9]

The trial court sustained Hearthstone's demurrer without leave to amend, finding that McGill had failed to allege facts to establish that Hearthstone owed a statutory or common law duty of care "to assure that the terms of [the] lease are legal." In addition, the court concluded that McGill's negligence cause of action was "barred by the economic loss rule."

The court also denied McGill's request to file a fourth amended complaint, noting that, to the extent she was seeking leave to state new causes of action, she must file a separate noticed motion.

After McGill did not file a motion for leave to amend,[10] the court entered a judgment of dismissal in favor of Hearthstone on October 11, 2022. McGill timely appealed.

---

[9] This cause of action was premised on allegations that McGill and other tenants were third–party beneficiaries of the LPA.

[10] At oral argument, Hearthstone argued that McGill has forfeited any claim of error relating to amendment of her pleading by failing to bring such a noticed motion. Although we exercise our discretion to consider McGill's contentions on the merits, forfeiture is a colorable argument. "The general rule allowing a plaintiff to request leave to amend for the first time on appeal does not apply [] if the trial court sustains a demurrer with leave to amend and the plaintiff elects not to amend the pleading. [Citation.]" (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 861.) Although here the trial court sustained Hearthstone's demurrer *without* leave to amend, the same exception applies where the trial court offers, and the plaintiff "decline[s,] an opportunity to amend the pleading." (*Ibid.*)

10

## II. DISCUSSION

### A. *Request for judicial notice*

McGill requested that we take judicial notice of certain pleadings and an order granting class certification filed in a federal action, *Munguia-Brown, et al. v. Equity Residential, et al.*, United States District Court for the Northern District of California, Case No. 4:16-cv01225. Specifically, McGill has requested that this court take judicial notice of: (1) the Third Amended Complaint for Injunctive Relief, Declaratory Relief, and Restitution, filed November 16, 2011; (2) the federal court's October 2, 2017 Order Granting Motion for Class Certification; and (3) Defendants' Answer to Plaintiffs' Second Amended Complaint, filed February 22, 2017. McGill explains that these documents are relevant to counter the trial court's decision in this case that "no cause of action exists under Civil Code section 1671" by demonstrating "that such a[] [cause of] action has previously been brought, answered and certified as a class action."

Hearthstone's opposition to the request for judicial notice argues that the documents in question are not relevant. In addition, Hearthstone notes that the request fails to comply with California Rules of Court, rule 8.252 as McGill does not indicate whether she asked the trial court to take judicial notice of the matter (and if so, whether judicial notice was taken by the trial court) or whether the matter relates to proceedings occurring after the order or judgment that is the subject of the appeal. (Cal. Rules of Court, rule 8.252(a)(2) (B) & (D).)

By separate order dated May 16, 2023, we deferred ruling on this request for consideration with the merits of the appeal.

"Although a court may judicially notice a variety of matters (Evid. Code, § 450 et seq.), only *relevant* material may be noticed." (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.) " 'The court may in its discretion take judicial notice of any court record in the United States. (Evid. Code, § 451.) This includes any orders,

11

findings of facts and conclusions of law, and judgments within court records. [Citations.] However, while courts are free to take judicial notice of the existence of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files. [Citation.] Courts may not take judicial notice of allegations in affidavits, declarations and probation reports in court records because such matters are reasonably subject to dispute and therefore require formal proof.' [Citation.]" (*Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 145.)

Although we have the discretion to take judicial notice of court records, including those from federal courts, the truth of the matters set forth in those documents, i.e., as alleged in the pleadings and as recited in the district court's order on class certification, is not the proper subject of judicial notice, and the existence of these documents alone is irrelevant to our decision. Even assuming the district court's order on class certification had any bearing on whether or not an independent cause of action can be stated for an alleged violation of Civil Code section 1671, that order would be persuasive authority at best. "The [class] certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.)

The request for judicial notice is denied.

### B. No error in granting summary adjudication of McGill's UCL claim

McGill raises several arguments to explain why, in her view, the trial court erred in granting Hearthstone's motion for summary adjudication of her UCL cause of action. First, she contends Hearthstone was a direct participant in the unlawful conduct. Second, if not a direct participant, Hearthstone is liable under the UCL as Woodstone's agent or alter ego. Third, pursuant to Corporations Code section 15904.04, Hearthstone is liable

12

for the acts and omissions of the partnership that violate the UCL.  As explained below, we disagree.

### 1. Standard of review

"A motion for summary adjudication 'proceed[s] in all procedural respects as a motion for summary judgment.'  (Code Civ. Proc., § 437c, subd. (t)(5).)  The moving party 'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the movant] carries [this] burden of production,' the burden of production shifts to the opposing party 'to make a prima facie showing of the existence of a triable issue of material fact.'  [Citation.]"  (*Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 453 (*Choochagi*).)

"In determining whether the parties have met their respective burdens, 'the court must "consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party.'  [Citation.]"  (*Choochagi, supra*, 60 Cal.App.5th at p. 453.)  " 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'  [Citation.]"  (*Ibid.*)

" 'In reviewing a trial court's grant of summary judgment [or summary adjudication], … " '[w]e take the facts from the record that was before the trial court when it ruled on that motion' " and " ' " 'review the trial court's decision de novo … .' " ' " ' [Citation.]"  (*Choochagi, supra*, 60 Cal.App.5th at p. 453.)

### 2. Elements of a UCL cause of action

"The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' " (*Solus Industrial Innovations*, *LLC v. Superior Court* (2018) 4 Cal.5th 316, 340.)  To that end,

13

the UCL " 'provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices.' " (*Ibid*., italics omitted.)  The Business and Professions Code section 17200 "defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.'  ([Bus. & Prof. Code, ]§ 17200.)  …  By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180, fn. omitted.)

### 3. Hearthstone's evidence met its initial burden of proof on its direct liability under the UCL

In this case, Hearthstone's motion for summary adjudication is supported by evidence, specifically the declarations of Vasquez and Gancar, as well as the LPA, demonstrating that it was not asked nor did it provide input on the terms of the lease agreement, including the late rent fee, was not involved in enforcing or collecting the late rent fee, and was not aware that late rent fees were imposed on tenants until McGill filed her complaint.  Hearthstone's evidence further shows that its role in the partnership was limited to: (1) securing and maintaining the low–income housing property tax exemption, and (2) providing charitable services or information about such services to the property's tenants.  This evidence is sufficient to meet Hearthstone's initial burden of proof that it was not engaged in the unlawful practice alleged by McGill.

We are not persuaded by McGill's assertion that the terms of the LPA mandated Hearthstone's involvement in including and enforcing the alleged illegal late rent fee. McGill cites two cases, *People v. JTH Tax* (2013) 212 Cal.App.4th 1219 (*JTH Tax*) and *Khan v. Medical Board* (1993) 12 Cal.App.4th 1834 (*Khan*), to support her claim that

14

Hearthstone's obligations under the LPA are sufficient to impose liability under the UCL for the late rent fee. These cases are distinguishable.

In *JTH Tax*, the defendant franchisor (Liberty), a business providing "tax preparation and related loan services," was found liable under various consumer protection laws including the UCL for, among other things, the false advertising of its franchisees. (*JTH Tax*, *supra*, 212 Cal.App.4th at p. 1223.) On appeal, the court concluded that the evidence presented below demonstrated that Liberty had "essentially complete control" over its franchisees. (*Id*. at pp.1239-1240.) Therefore, Liberty's franchisees were its agents, rather than independent contractors, and Liberty was therefore liable under the UCL for their false advertising. (*Id*. at pp. 1242-1243.) Under California law, " '[t]he general rule is where a franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists. [Citation.]' [Citations.]" (*Id*. at p. 1242.)

*JTH Tax* thus stands for the principle that, where a party can exercise unfettered control over another, a principal-agency relationship will be found. In this case, however, McGill offered no evidence to show that Hearthstone had *any* control over the terms of the lease agreements or the amount charged for late rent by Woodstone.

In *Khan*, the defendant physician was found to have engaged in false advertising by placing the names of two people not licensed to practice medicine on the door to his office. (*Khan*, *supra*, 12 Cal.App.4th at pp. 1838-1839.) On appeal, he argued the finding must be reversed because the placement of names "was done out of a mistake of fact, which disproves any criminal intent." (*Id*. at pp. 1845-1846.) The Court of Appeal rejected his argument, concluding that the statute at issue, Business and Professions Code section 17500, is a public welfare offense which can be violated through negligence and without criminal intent. (*Id*. at p. 1846.) The defendant "knew for a fact that Ms. Khan [defendant's sister] was not licensed, yet he permitted her name to be on his door and

listed in the lobby as a doctor practicing in his clinic." (*Ibid*.) As to the second unlicensed individual, the defendant "had the responsibility to assure that Mr. Mar was licensed" but failed to do so thereby breaching his duty of reasonable care. (*Ibid*.)

*Khan* is inapposite because it would apply only if there were some evidence Hearthstone had a duty to direct and control Woodstone's operations and the terms of its rental agreements. As discussed above, Hearthstone's evidence demonstrates it did not have such a duty or control. Considering all reasonable inferences to be drawn from all the evidence and in the light most favorable to McGill, we conclude that Hearthstone has made a prima facie showing of the nonexistence of any triable issue of material fact under the UCL cause of action. (*Choochagi, supra*, 60 Cal.App.5th at p. 453.)

### 4. McGill's evidence fails to raise a triable issue of fact on Hearthstone's direct liability under the UCL

McGill's opposing evidence, at least that which was not ruled inadmissible, does not raise a triable issue of fact as to Hearthstone's direct culpability under the UCL. The admissible evidence shows only that, pursuant to the lease agreement, Woodstone owned the property McGill leased, FPI was Woodstone's agent and the on-site property manager, and late payment of rent would incur a $50 fee. According to Woodstone's discovery responses, FPI created a document entitled "Late Fee Tracker" and Woodstone based the amount of the late rent fee on the information in that document. In addition, McGill submitted evidence that she paid late rent fees on four separate occasions from 2017 to 2019. None of this evidence raises a triable issue of fact as to Hearthstone's liability under the UCL for late rent fees.

We are also not persuaded by McGill's argument that Hearthstone could be liable as a direct participant under section 7.17, subdivision (b) of the LPA which requires that it "monitor compliance with … governmental regulations" and "participate in … overseeing" the work of management personnel. McGill cites no government regulation

16

regarding late rent fees with which Woodstone or FPI were to comply under Hearthstone's watch. Further, assuming arguendo that Hearthstone breached its contractual obligations under the LPA, those obligations were owed to the other party(ies) to that contract, not McGill or any other tenant.[11]

### 5. McGill's evidence also fails to raise a triable issue of fact on Hearthstone's liability as Woodstone's agent

McGill also argues Hearthstone is liable for its actions as Woodstone's agent. She relies on Civil Code section 2343, subdivision 3, which provides that "[o]ne who assumes to act as an agent is responsible to third persons as a principal for his [her, or their] acts in the course of his [her, or their] agency … [¶¶] [w]hen his [her, or their] acts are wrongful in their nature." McGill contends that Hearthstone "acted wrongfully in allowing the improper late fee to be imposed" by failing to "assur[e] regulatory compliance" and "not participating in the oversight of the property manager" as it was required to do under the LPA.

While Hearthstone does not dispute that it was Woodstone's agent, its declarations and the LPA established that it played no role in drafting lease agreements or enforcing their terms and thus did not commit any wrongful acts such that it would be liable under the UCL by way of Civil Code section 2343, subdivision 3. Furthermore, Civil Code section 2343 "only makes an agent liable for affirmative misfeasance; it does not render an agent liable to third parties for the failure to perform duties owed to his principal. [Citation.] … [¶] … *so long* as that failure to perform did not breach a duty of care the agent *owed to the third parties*." (*Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th. 680, 694, italics in original.) Notwithstanding her arguments to the

---

[11] In addition, it is well-settled that the UCL "is not an all-purpose substitute for a … contract action." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173.)

17

contrary, McGill has not presented any evidence that Hearthstone engaged in any affirmative misfeasance or wrongful acts, failed to perform any duties owed to Woodstone, or as discussed *post*, breached any duty of care owed to McGill.

Because Hearthstone's evidence met its initial burden of proving that it was not liable either directly or as Woodstone's agent under the UCL and McGill failed to present evidence raising a triable issue of fact on the matter, the trial court properly granted Hearthstone's motion for summary adjudication of that cause of action.

### 6. McGill cannot defeat summary adjudication through unpleaded theories of alter ego liability or liability under Corporations Code section 15904.04 and her lack of diligence in seeking leave to amend her pleading forecloses those theories

Although McGill claims on appeal that Hearthstone is liable as an alter ego of Woodstone or pursuant to Corporations Code section 15904.04,[12] she concedes that she did not allege these theories of liability in her pleadings. It is well-settled that "summary [adjudication] cannot be *denied* on a ground not raised by the pleadings. [Citations.]" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1662-1663, italics in original.) "The counteraffidavits [*sic*] filed in response to a defendant's motion for summary [adjudication] may not create issues outside the pleadings; are not a substitute for an amendment to the pleadings; and are an ineffective defense to the motion unless they 'set forth facts showing that . . . a good cause of action exists upon the merits.' [Citations.]" (*Craig v. Earl* (1961) 194 Cal.App.2d 652, 656.) As a result, McGill

---

[12] Corporations Code section 15904.04 provides as follows: "(a) Except as otherwise provided in subdivision (b), all general partners are liable jointly and severally for all obligations of the limited partnership unless otherwise agreed by the claimant or provided by law. [¶] (b) A person that becomes a general partner of an existing limited partnership is not personally liable for an obligation of a limited partnership incurred before the person became a general partner."

18

cannot rely on either alter ego liability or Corporations Code section 15904.04[13] as a basis for defeating Hearthstone's summary adjudication motion.

McGill next argues that the trial court should have granted her leave to amend her pleading to add alter ego allegations and allegations regarding Corporations Code section 15904.04 in the complaint.

We agree with the trial court that McGill is precluded from seeking leave to amend for this purpose. Her failure to include any such allegations in her third amended complaint, "filed pursuant to stipulation *two months after [Hearthstone's] motion [for summary adjudication] was filed*" (italics in original) is dispositive. (See *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 [no abuse of discretion in denying leave to amend pleading where long unexplained delay or lack of diligence in seeking leave to amend].)

### C. No abuse of discretion in sustaining demurrer

We next examine whether the trial court erred in sustaining Hearthstone's demurrer to McGill's negligence cause of action without leave to amend. As discussed below, we conclude that there was no error.

#### 1. Applicable legal principles

_____

[13] McGill seeks to avoid her failure to refer to Corporations Code section 15904.04 by suggesting that Hearthstone's moving papers and her opposition to the motion for summary adjudication suffice to put the matter at issue. We reject her expansive definition of what constitutes "the pleadings" for purposes of motions of summary judgment/adjudication. "Code of Civil Procedure section 420 explains that pleadings serve the function of setting forth 'the formal allegations by the parties of their respective claims and defenses, for the judgment of the Court.' (Code Civ. Proc., § 420.)" (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746 (*Myers*).) Code of Civil Procedure section 422.10 provides that "[t]he pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints." "[N]either a motion for summary judgment nor its accompanying statement of undisputed facts constitutes pleadings within the meaning of Code of Civil Procedure section 422.10." (*Myers*, *supra*, at p. 747.)

19

We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading states facts sufficient to constitute a cause of action. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); see also *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1075.)

A cause of action for negligence must allege the following elements: (1) a duty of care owed by the defendant, (2) a breach of that duty, and (3) that breach was the proximate cause of the plaintiff's resulting injury. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 292.) " 'A duty of care may arise through statute' or by operation of the common law. [Citation.]" (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 920 (*Sheen*).) The absence of a legal duty defeats any claim of negligence. (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 396.) Furthermore, the existence of a duty of care to support a negligence cause of action is a question of law to be decided by the court. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770-771.)

### 2. Analysis

McGill's second cause of action alleges that Hearthstone, along with HHF and Woodstone, own, operate, and manage the property she formerly rented. The defendants thus had a duty of care to ensure that the terms of her rental agreement, including the late

20

rent fee term, complied with the law. Hearthstone and the other defendants breached their duty of care because the late rent fee term violates Civil Code section 1671, subdivision (d) and McGill suffered damages when she was compelled to pay such fees.

As noted above, the existence of a duty of care is a question of law, so we are not bound by McGill's allegation that Hearthstone as "owner[]/operator[]/manager[] had a duty to assure that the terms of their lease forms were legal." The trial court, in sustaining Hearthstone's demurrer, correctly observed that McGill is mistaken in asserting that a duty of care arises under Civil Code section 1671 because that statute "does not require a defendant to engage in certain conduct or act in any particular manner." Civil Code section 1671, subdivision (d) provides a rubric for determining whether "a provision in a contract liquidating damages" for breach of a contract is void.[14]

Both parties cite *Beasley v. Wells Fargo Bank*, *supra,* 235 Cal.App.3d 1383 (*Beasley*) as supporting their respective positions. *Beasley* does state that Civil Code "section 1671, subdivision (d) permits a consumer to seek monetary relief, *both offensively and defensively*, from liquidated damages." (*Id*. at p. 1401.) However, we do not read this language to mean that the statute imposes a duty of care supporting a *tort* cause of action. In fact, the *Beasley* court appeared to assume that the plaintiff's action sounded in contract, not tort. (See *id*. at p. 1402 [concluding that four-year statute of limitations for action on a written contract applies to claim for recovery of void liquidated damages.])[15] Accordingly, we conclude that McGill cannot rely on Civil Code section 1671 to state a negligence cause of action.

---

[14] Civil Code section 1671, subd. (d) provides in pertinent part: "[A] provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

[15] As Hearthstone is not a party to the lease agreement, McGill cannot allege a breach of contract claim against it without showing that she is a third–party beneficiary of

21

We also reject McGill's argument that she may assert a negligence cause of action against Hearthstone because a "special relationship" existed between herself, as a tenant, and Hearthstone, as her landlord. "A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant," such as the relationship "between parents and children, colleges and students, [or] employers and employees." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 216.) McGill has not alleged facts establishing the existence of *any* relationship, let alone a "special relationship," between herself and Hearthstone. The lease agreement attached to her third amended complaint does not name Hearthstone at all. The only other entities named in that agreement, aside from herself, are Woodstone (as owner) and FPI (as property manager).

As McGill failed to allege facts sufficient to show that Hearthstone owed her a duty of care and there is no reasonable probability she could amend her complaint to state a negligence cause of action, the trial court did not err in sustaining Hearthstone's demurrer to that cause of action without leave to amend.

### D. No abuse of discretion in not granting leave to further amend McGill's pleading

We now turn to whether the trial court properly denied McGill leave to file a fourth amended complaint stating additional novel causes of action.

McGill's proposed fourth amended complaint, which she submitted to the court with her opposition to Hearthstone's demurrer, added four new causes of action, i.e., violation of Civil Code section 1671,[16] promissory estoppel, negligent misrepresentation,

---

that contract. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830 (*Goonewardene*).) We explain in section II.D.4 why she cannot do so.

[16] We have already explained why McGill cannot state a claim for relief against Hearthstone pursuant to Civil Code section 1671 and will not repeat that discussion here.

and breach of contract. Each of the new causes of action were premised on the allegedly illegal late rental fee clause. McGill explained that she had not previously asserted these causes of action because defendants had only recently cited to *Sheen*, *supra*, 12 Cal.5th 905, in connection with their demurrer to her third amended complaint.[17]

### 1. Applicable legal principles

A trial court may allow the amendment of a pleading at any time up to and including trial. (Code Civ. Proc., §§ 473, subd. (a)(1), 576.) " ' "[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.]" ' [Citations.] Courts must apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings . . . when no prejudice is shown to the adverse party. [Citation.]" (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746 (*Huff*).)

" 'When a demurrer is sustained without leave to amend the petitioner may advance on appeal a new legal theory why the allegations of the petition state a cause of action.' [Citation.] This is so because of the general rule that ' "a litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts." ' [Citation.]" (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259.) "The plaintiff has the burden of proving that an amendment would cure the defect [in the pleading]." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.) Moreover, "[l]eave to amend is properly denied when the facts are undisputed and as a substantive matter no liability exists under the plaintiff's new theory." (*Huff, supra*, 138 Cal.App.4th at p. 746.) Leave to amend is also properly denied where the proposed

---

[17] Hearthstone points out that it filed its demurrer to McGill's third amended complaint four months after the California Supreme Court decided *Sheen*. *Sheen* was filed on March 7, 2022, and Hearthstone's demurrer was filed on July 6, 2022.

amendment effects "a change … in the *liability* sought to be enforced against the defendant." (*Klopstock v. Superior Court of San Francisco* (1941) 17 Cal.2d 13, 20, italics added.)

The trial court's ruling on a motion to amend a pleading is reviewed under an abuse of discretion standard. (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 135.) Furthermore, we must "begin our analysis mindful that an 'order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 421.)

### 2. *McGill's allegations do not state a claim for negligent misrepresentation*

McGill asserts she can allege a claim for negligent misrepresentation by Hearthstone because the lease agreement states that the fee " 'represent[s] a reasonable approximation of the damages Owner is likely to suffer from a late . . . payment.' " We disagree.

The elements of a cause of action for negligent misrepresentation are: (1) "a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true," (2) intent to induce the plaintiff's reliance on the misrepresentation, (3) actual and justifiable reliance by the plaintiff, and (4) resulting damage. (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230-231.) Because a cause of action for negligent misrepresentation sounds in fraud, each element must be pleaded with specificity. (*Ibid.*) "The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they

24

spoke, what they said or wrote, and when the representation was made." (*West v. JPMorgan Chase Bank*, *N.A.* (2013) 214 Cal.App.4th 780, 793.)

McGill has set forth no specific allegations that Hearthstone negligently gave false information to her in connection with the $50 late fee. McGill proffers no specific facts to show that Hearthstone was involved in drafting the lease agreement and knew or should have known that the "approximation of damages" language is inaccurate or false. Furthermore, since Hearthstone is not even named in the lease agreement, it is not clear how McGill could allege that it made any misrepresentations to her therein. As a result, we conclude that the trial court did not abuse its discretion in denying the motion since McGill has failed to show a reasonable possibility she can amend her complaint to state a claim for negligent misrepresentation against Hearthstone. (*Blank*, *supra*, 39 Cal.3d at p. 318.)

### *3*. *McGill*'*s allegations do not state a claim for promissory estoppel*

A claim for promissory estoppel consists of four elements: " '[1] A promise [2] which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person [] [3] which does induce such action or forbearance . . . [and 4] injustice can be avoided only by enforcement of the promise.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) The promise must be one that is "clear and unambiguous in its terms." (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890.) Claims for promissory estoppel are "*basically the same as contract actions*, but only missing the consideration element." (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 903, italics added.)

Like her claim for negligent misrepresentation, McGill's promissory estoppel cause of action fails to allege facts showing that Hearthstone was involved in drafting the lease agreement and thus made any sort of promise to her. Hearthstone is not named in

25

or a party to the lease agreement and any promises contained therein cannot be ascribed to it. The trial court did not abuse its discretion since McGill has failed to show a reasonable possibility she can amend her complaint to state a promissory estoppel cause of action against Hearthstone. (*Blank*, *supra*, 39 Cal.3d at p. 318.)

### 4. *McGill's allegations do not establish she is a third party beneficiary of the contract between FPI and Woodstone*

Finally, McGill seeks to allege a breach of contract action against Hearthstone because she and other class members are third party beneficiaries to the contract between Hearthstone and Woodstone, i.e., the LPA. She avers that Hearthstone contracted to " ' monitor compliance with all government regulations" and " 'participate in hiring and overseeing the work of all persons necessary to provide services for the management and operation of the Partnership.' " McGill alleges that the "purpose of these provisions was to assure that tenants such as herself and others could rely upon and benefit from the legality and enforceability of terms of the lease, that no illegal conduct would occur due or through them and that said Defendants would assure this." Again, we disagree.[18]

The California Supreme Court has explained that the third party beneficiary doctrine will be applied when, after "carefully examin[ing] the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to," it can be determined: "(1) whether the third party would in fact benefit from

---

[18] McGill failed to attach a copy of the LPA to her proposed fourth amended complaint, but Hearthstone submitted the document as evidence in support of its motion for summary adjudication. McGill did not object to any of Hearthstone's evidence and specifically referenced the LPA in her opposition papers. Because the LPA is part of the record on appeal, we will treat it as having been attached to the proposed fourth amended complaint. In an action based on a written contract, a plaintiff may plead the legal effect of the contract, plead its precise language, or attach a copy of the contract to the complaint to be incorporated by reference. (See *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198-199; *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 401-402.)

the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three elements must be satisfied to permit the third party action to go forward." (*Goonewardene*, *supra*, 6 Cal.5th at p. 830.) The court clarified that as to the second element, "the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract." (*Ibid*.)

In *Goonewardene*, the California Supreme Court found the "motivating purpose" element of the third party beneficiary doctrine could not be met under the facts of that case. "When an employer hires a payroll company, providing a benefit to employees with regard to the wages they receive is ordinarily not a motivating purpose of the transaction. Instead, the relevant motivating purpose is to provide a benefit *to the employer*, with regard to the cost and efficiency of the tasks performed and the avoidance of potential penalties. Although the employer intends that the payroll company will accurately calculate the wages owed . . . under the applicable labor statutes and wage orders, in situations in which it may be unclear or debatable as to how the applicable rules should be interpreted or applied, the employer would reasonably expect the payroll company to proceed with the employer's interest in mind. In short, the relevant motivating purpose of the contract is simply to assist the employer in the performance of its required tasks, not to provide a benefit to its employees with regard to the amount of wages they receive." (*Goonewardene*, *supra*, 6 Cal.5th at p. 835.)

The same analysis controls here. The "motivating purpose" of the LPA was to secure the low–income housing tax exemption to benefit Woodstone, not to ensure that the terms in the lease agreements between Woodstone and its tenants were legal.

27

(*Goonewardene*, *supra*, 6 Cal.5th at p. 835.)  Accordingly, the trial court did not abuse its discretion because McGill has not shown a reasonable possibility she can amend her complaint to allege a claim for breach of contract as a third party beneficiary against Hearthstone.  (*Blank v. Kirwan*, *supra*, 39 Cal.3d 311, 318.)

### III.    DISPOSITION

The judgment is affirmed.  Hearthstone shall recover its costs on appeal.

_____
WILSON, J.


WE CONCUR:




_____
GREENWOOD, P. J.




_____
BAMATTRE-MANOUKIAN, J.




*McGill v. Hearthstone CA Properties I, LLC*
H050636