Filed 1/20/26  Sump v. Luxon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SUMP et al., | H052012 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 20CV366437) |
| v. | |
| LUXON et al., | |
| Defendant and Respondent. | |

This case concerns a short-lived cannabis enterprise.  In 2017, William Sump planned with Nathaniel Ready and John Vitale to start an integrated enterprise manufacturing and distributing legal cannabis.  Shortly after several corporate entities were organized and a property was purchased, the relationship between Sump, Ready and Vitale soured.  Ready and Vitale then dissolved several of the entities that had been organized and took control of the property that had been purchased.  Later, they denigrated Sump's honesty and integrity.  Accordingly, in 2020, Sump sued Ready, Vitale, and others, asserting a host of claims.

This appeal concerns two parties besides Ready and Vitale sued by Sump: Trevor Luxon and his former law firm, Rice, Luxon & Bolster-Grant LLP (collectively, Luxon).  Sump included Mr. Luxon in his breach of fiduciary duty cause of action, and he alleged that all defendants conspired to defraud him and convert his property.  After discovery,

Luxon moved for summary judgment. Largely treating the motion as a motion for judgment on the pleadings, the trial court granted the motion and denied Sump's request for leave to amend the complaint.

Sump appeals, arguing that he stated valid claims for breach of fiduciary duty, conversion, and fraud against Luxon. As explained below, we agree that Sump stated a valid claim against Luxon for breach of fiduciary duty. However, we conclude that Sump failed to state valid claims against Luxon for conspiracy to defraud or to convert Sump's property. In addition, we conclude that the trial court did not abuse its discretion in denying Sump leave to amend the complaint. We express no view on whether Sump has raised a triable issue on the breach of fiduciary duty claim.

Accordingly, the judgment in favor of Luxon is reversed, and this case is remanded to the trial court.

## I. BACKGROUND

Because the trial court granted summary judgment based on the inadequacy of Sump's pleadings, we draw the facts recounted below primarily from the complaint, treating its allegations as true and liberally construing them. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118; *Prue v. Brad Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1376.)

### A. Planning for the Cannabis Enterprise

In the summer of 2017, Sump, Ready, Vitale, and a fourth individual decided to form a partnership and create an integrated cannabis enterprise. To facilitate this business, they created entities to manufacture cannabis, to distribute it, and to own the property where the manufacturing and distribution operations would be based.

### 1. R&V Consulting, Inc.

In September 2017, R&V Consulting, Inc. (R&V) was incorporated. R&V was to provide "cannabis consulting focused on the creation and licensing of [a] suite of cannabis related businesses." Ready and Vitale each initially owned approximately

25 percent of R&V, and Sump 17 percent, but these percentages later decreased slightly when relatives of Ready loaned R&V money. The voting interests of Ready, Vitale, and Sump were slightly higher than their ownership interests: respectively, approximately 34 percent, 34 percent, and 23 percent.

### 2. RS Enterprise, LLC and the Encinal Property

Sump wanted R&V to secure commercial real estate on which cannabis manufacturing and distribution companies could operate, and for 18 months he searched for a location to lease. Eventually, Sump decided that it would be better to purchase a property. Because R&V was too closely connected to the cannabis business to obtain traditional financing, Ready and Sump decided to form a limited liability company, RS Enterprises, LLC (RS), to hold property for R&V.

RS was incorporated in April 2018. RS was owned by Sump and Ready. Sump had a 60 percent ownership interest and Ready 40 percent, and the two had similar voting interests. RS found a property in Santa Cruz with three separate addresses, including two on Encinal Street (the Encinal Property), that was well-suited to the planned cannabis enterprise, and in August 2020 the purchase of the property closed. RS then leased the property to two other entities formed for the enterprise.

### 3. Ready for Life, Inc.

One of the entities to which RS leased was Ready for Life, Inc. (RFL), which was created to hold the cannabis enterprise's manufacturing license. RFL was incorporated in October 2017, one month after R&V. Ready had a 22.5 percent ownership interest in RFL, Vitale 22.5 percent, and Sump 15 percent, and their voting interests were 34 percent, 34 percent, and 23 percent.

### 4. SC Bloom Network, Inc.

The second entity to which RS leased was SC Bloom Network, Inc. (SC Bloom). SC Bloom was created to hold the cannabis distribution license and manage distribution operations. It was organized much later that R&V, RS, and RFL: in June 2018,

3

two months before RS closed on the Encinal Property. Unlike R&V, RS, and RFL, SC Bloom was owned and controlled entirely by Sump. In December 2018, SC Bloom was issued a temporary distributor license based on use of the Encinal Property.

## B. Collapse of the Planned Enterprise

In August 2018, SC Bloom moved into the Encinal Property. A few days later, Ready, Vitale, and Sump traveled to Los Angeles for meetings, and the enterprise immediately began to fall apart. During those meetings, Vitale became visibly upset with Sump, and over the next four months Ready and Vitale maneuvered Sump out of R&V, RS, and RFL.

### 1. The Restraining Order

At the end of September 2018, R&V held a board meeting at Sump's residence. Ready and Vitale arrived wearing body armor. In the meeting, they told Sump that he was fired and would be divested of all membership and voting rights in R&V, RS, and RFL. A physical altercation ensued, and Ready and Vitale subsequently sought—and obtained—a restraining order against Sump, which, among other things, prevented him from accessing the Encinal Property.

### 2. The RS Board Meeting

In late October 2018, Ready called an RS board meeting at the office of his attorney and, based on the restraining order, excluded Sump from the meeting. During the meeting, Ready voted to divest Sump of his ownership interest and voting rights in RS. In addition, RS's accountants created an "equity of accounts statement" that increased Ready's ownership interest in RS from 40 percent to 100 percent.

The following month, ownership of the Encinal Property was transferred from RS to KJM Properties, LLC (KJM), a limited liability corporation owned by Ready and several relatives.

4

### 3. *The R&V and RFL Board Meeting*

Finally, in December 2018, a special meeting of the board of directors for R&V and RFL was held. As common stockholders, Sump, Ready, and Vitale held almost all of the voting interests in these entities. However, preferred stockholders were permitted to attend the meeting and vote. In addition, although the bylaws for R&V and RFL required unanimous consent for dissolution, the boards voted to dissolve both R&V and RFL over Sump's objection. Afterwards, 410 Extracts, Inc., an entity controlled by Ready and Vitale, assumed the assets, benefits, and obligations of R&V and RFL.

## C. Subsequent Actions Against Sump

After Ready and Vitale forced Sump out of the entities that they had formed with him, they attacked Sump in other ways. For example, in 2019, Sump attempted to enter into a partnership to operate a cannabis storage facility, but this deal fell through after Ready met with one of Sump's prospective partners and impugned Sump's honesty and ethics. In addition, Vitale allegedly hacked into SC Bloom's social media account and made defamatory accusations against Sump both in those accounts and elsewhere, including at a cannabis industry trade show named Power of Flower. Vitale also continued to harass Sump in late 2019 and early 2020.

## D. Luxon's Involvement

Trevor Luxon, a "local cannabis attorney," played a minor role in the aborted cannabis enterprise between Ready, Vitale, and Sump. At some point, apparently in mid-2018, Mr. Luxon met with the three and Charlee Dubbe, the fourth partner in the enterprise as well as Luxon's half-brother, to discuss cannabis licensing. Mr. Luxon also allegedly drafted a contract that helped complete RS's purchase of the Encinal Property and, later, a buyout agreement for Dubbe. Finally, Mr. Luxon allegedly represented both Sump and SC Bloom on other matters, and Mr. Luxon was SC Bloom's agent for service of process.

Luxon also played a role in several events at issue in this appeal.

### a. The R&V and RFL Board Meeting

Luxon's involvement began with the December 2018 special meeting at which R&V and RS were dissolved. That meeting was held at Luxon's office. According to the complaint, Luxon "fraudulently diluted Sump's voting right in Ready for Life and R&V by conducting the meeting as if preferred stock shareholder were common stock shareholders." (Capitalization omitted.) Luxon also allegedly "dissolved the entities."

### b. The Power of Flower Trade Show

Luxon played a larger role in the Power of Flower industry trade show. Luxon allegedly made statements to the event's compliance officer questioning Sump's honesty and ethical fitness. In response, the officer removed SC Bloom's products from display and sale. However, later that day, after assuaging the concerns of the event organizer, Sump was able to resume selling SC Bloom's products at the event.

### c. The Bureau of Cannabis Control Memorandum

Finally, in August 2019, Luxon submitted a memorandum to the Bureau of Cannabis Control (BCC), accusing SC Bloom of operating unlawfully because it lacked a possessory interest in the Encinal Property, the address listed on SC Bloom's license. Five days after Luxon submitted the memorandum, the BCC revoked SC Bloom's license for a different reason: Sump did not appear on the local land use application for the Encinal Property, which was listed on the license, and therefore SC Bloom lacked the local authority needed to maintain licensing. As a result, SC Bloom was forced to acquire a new property, for which it hired an architect, land use consultant, and accountant in addition to incurring legal expenses.

## E. The Proceedings Below

### 1. The Complaint

In May 2020, Sump and SC Bloom sued Ready, Vitale, three of Ready's relatives, KJM (the company to which the Encinal Property was transferred), 410 Extracts (the company that assumed the assets of R&V and RFL), RS's accountant, the accountant's

6

firm, Mr. Luxon, and his former law firm. The complaint also named RS and R&V as plaintiffs.

The complaint asserted 15 causes of action, including breach of fiduciary duty, conversion, fraud, defamation, tortious interference, breach of the covenant of good faith and fair dealing, quiet title, ejectment, dissolution, expulsion of partners, and cancellation of a certificate of cancellation. All the causes of action were brought against Ready, and two (conversion and fraud) were brought against all defendants. Luxon is specifically named in one cause of action: the second one for breach of fiduciary duty. The complaint sought damages, punitive damages, injunctive relief, and a declaration.

### 2. *Luxon's Motion for Summary Judgment*

In May 2023, almost exactly three years after the complaint was filed and five months before trial was set to begin in October 2023, Luxon moved for summary judgment on the fiduciary duty, conversion, and fraud claims against him as well as the punitive damages request. In support of the motion, Luxon argued that Sump lacked evidence needed to raise triable issues concerning breach of fiduciary duty, conversion, or fraud and that the complaint failed to plead valid claims against him for fraud or conversion. Sump filed an opposition, and at the oral argument on the motion in September 2023, he asked, if the trial court found his pleadings deficient, for leave to file an amended complaint.

The trial court granted judgment for Luxon on all claims against him and denied leave to amend. Although Luxon did not argue that Sump failed to plead a valid fiduciary duty claim against him, the trial court held that the complaint failed to plead a valid claim against him.

In ruling that Sump failed to state a valid fiduciary duty claim against Luxon, the trial court reasoned that the fiduciary duty cause of action was "exclusively based on a duty of loyalty owed to RS and Sump as a member of RS" and Luxon's alleged conduct had nothing to do with any duty of loyalty owed to RS or Sump as a member of RS (and,

indeed, involved events that occurred after RS admittedly was dissolved). The trial court also concluded that the complaint failed to allege damages from any alleged breach of fiduciary duty because it sought injunctive relief and stated that Sump had no adequate remedy at law because monetary damages cannot fully or adequately compensate him.

In ruling that the complaint failed to allege valid claims against Luxon for either conversion or fraud, the trial court noted that there were no allegations concerning Luxon in either the third cause of action for conversion or the fifth cause of action for fraud. The trial court also ruled that the complaint's conspiracy allegations were deficient. Although the complaint contained general allegations of conspiracy, the trial court held these allegations inadequate because they did not allege that Luxon had knowledge of and agreed to the objective and the course of action allegedly injuring Sump, that there was a wrongful act committed pursuant to that agreement, or that there was resulting damage.

Finally, the trial court denied what it characterized as Sump's "eleventh-hour request for leave to amend." The court did so on three grounds: (1) The complaint had so many deficiencies that it was not clear that amendment could cure all of them; (2) even if these defects could be cured, it was unclear whether Sump could raise triable issues, particularly with respect to damages; and (3) "it would be 'patently unfair' to permit a pleading amendment at this incredibly late stage of the proceedings." In support of the last point, the trial court observed the complaint was filed more than three years earlier and that Sump had waited over four months after the motion for summary judgment was filed—and a just a little over a month before trial was scheduled to begin—before raising the possibility of amendment at the hearing on the motion. This, the court reasoned, was "too little, too late."

### 3. *Subsequent Proceedings*

After the trial court granted summary judgment to Luxon, the case against Ready, Vitale, and other defendants went to trial, which apparently resulted in a judgment in

8

favor of Sump. In addition, a settlement, which Sump later moved to enforce, was reached.

Judgment in favor of Luxon was entered in February 2024. Sump filed timely notices of appeal after both the summary judgment order and the judgment in favor of Sump.

## II. DISCUSSION

Sump does not dispute that, in evaluating Luxon's summary judgment motion, the trial court properly considered whether his complaint stated valid claims against Luxon. Nor could he. It is well-settled that " '[t]he pleadings delimit the issues to be considered on a motion for summary judgment' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253), and, if the pleadings fail to allege a valid claim, " '[t]he summary judgment proceeding is thereby necessarily transmuted into a test of the pleadings and the summary judgment motion into a motion for judgment on the pleadings.' " (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 412.)

Instead, Sump argues on appeal that he pleaded valid claims for breach of fiduciary duty, conversion, conspiracy to convert, and conspiracy to defraud. Alternatively, Sump argues that, if any of his claims were not validly pleaded, the trial court abused its discretion in denying him leave to amend those claims. We address each argument below.

### A. Breach of Fiduciary Duty

The trial court ruled that the complaint did not state a valid claim for breach of fiduciary duty because it failed to allege adequately either a breach by Luxon or damages from such a breach. Sump argues that, in fact, he adequately pleaded fiduciary duty claims based on three events: (1) the memorandum to the BCC, (2) the dissolution of R&V and RFL, and (3) the accusation made at the Power of Flower trade show. As explained below, we agree that Sump pleaded valid fiduciary duty claims based on each of these theories.

9

### 1. *The BCC Memorandum*

We begin with Sump's claim that Luxon breached his fiduciary duty to Sump by sending a memorandum to the BCC in August 2019 asserting that SC Bloom, the distribution company owned by Sump, was operating unlawfully. Fiduciary duty claims have three elements: "the existence of a fiduciary relationship, breach of fiduciary duty, and damages." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West*).) The pleadings satisfy each element with respect to the BCC memorandum theory.

*First*, the complaint alleged the existence of a fiduciary relationship. It alleged that Luxon formed an attorney-client relationship with Sump and described an instance in which Sump requested legal assistance from Luxon, which Luxon provided, in connection with the purchase of the Encinal Property. The complaint also alleged that both Sump and SC Bloom were former clients of Luxon. As the Supreme Court has recognized, the attorney-client relationship is a fiduciary relationship, and the fiduciary duties of loyalty and confidentiality imposed by that relationship "continue[] in force even after the representation ha[s] ended." (*Oasis West*, *supra*, 51 Cal.4th at p. 821; see *Wutchumma Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574.) Consequently, the complaint adequately alleged that Luxon had a fiduciary relationship with Sump.

*Second*, the complaint alleged that Luxon breached the fiduciary duty of loyalty imposed by his attorney-client relationship with Sump. Even after an attorney severs his or her relationship with a client, the attorney " 'may not do anything which will injuriously affect [the] former client in any matter in which the [the attorney] formerly represented' " the client. (*Oasis West*, *supra*, 51 Cal.4th at p. 821.) The complaint alleged that Sump injuriously affected Luxon. Specifically, it alleged that Luxon informed the BCC that SC Bloom was operating unlawfully because Sump did not have a possessory interest in the Encinal Property, which Luxon had assisted Sump in obtaining for RS. Five days later, the BCC revoked SC Bloom's license, albeit on different

grounds.  As "[a] complaint's allegations are construed liberally in favor of the pleader" (*Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1341; see also *Skopp v. Weaver* (1976) 16 Cal.3d 432, 438 ["A basic rule commands us to construe the allegations of a complaint liberally in favor of the pleader."]), we infer that Luxon's memorandum prompted the BCC to investigate Sump's license and to discover what led it to revoke SC Bloom's license and therefore conclude that the complaint adequately alleged a breach of fiduciary duty.

*Third*, the complaint adequately alleged damages.  The complaint alleges that, because the BCC revoked its license, SC Bloom, which was exclusively owned by Sump, was forced to acquire and modify a new property, which required legal services as well as a new architect, land use consultant, and accountant.

Thus, at least at the pleadings stage, Sump has alleged a valid claim for breach of fiduciary duty against Luxon based upon the BCC memorandum.

In concluding that Sump did not state a valid fiduciary duty claim against Luxon, the trial court ruled that Sump's fiduciary duty claim was "exclusively based on a duty of loyalty owed to RS and to Sump as a member of RS" and that RS was dissolved in April 2019 before any of Luxon's alleged violations.  We disagree.  It is true that most of the second cause of action concerns the alleged fiduciary duty that Ready (and RS's accountants) owed to RS and Sump.  However, the second cause of action did not focus exclusively on RS.  It also contained allegations that Luxon had an attorney-client relationship with Sump, that Luxon "owe[d] a fiduciary duty of loyalty to Sump," and that Luxon's "conduct *as plead*[*ed*] breached the fiduciary duty of loyalty to Sump." (Italics added; capitalization omitted.)  In addition, as the second cause of action does not refer to any conduct by Luxon, we understand the "conduct as plead[ed]" to refer to earlier allegations in the complaint incorporated by reference into the second cause of action, such as those concerning the BCC memorandum.

The trial court also ruled that, even if the complaint had alleged a breach of fiduciary duty owed by Luxon, Sump failed to allege damages from that breach because the second cause of action sought only injunctive and non-monetary relief. Here again, we disagree. The second cause of action did not disclaim damages. It alleged that Sump "ha[s] been and will continue to be irreparably harmed, *damaged* and *injured*" by defendants' conduct and that "monetary damages cannot *fully* or *adequately* compensate" for this injury. (Italics added.) We understand these provisions to allege that Sump suffered some injury from the alleged breaches of fiduciary duty and therefore see no contradiction between the provisions and the expenses that Sump allegedly incurred in obtaining a new property in response to revocation of SC Bloom's license.

We therefore conclude that the complaint alleged a valid claim against Luxon for breach of fiduciary duty based on the BCC memorandum.

### 2. Dissolution of R&V and RFL

In addition to arguing that the BCC's memorandum breached Luxon's fiduciary duty to Sump, Sump contends that Luxon breached his fiduciary duty to Sump by facilitating the fraudulent dilution of Sump's voting interest in R&V and RFL and then dissolving both entities. The complaint also stated a valid claim based on this theory.

The allegations concerning the dissolution of R&V and RFL satisfy the three elements of a fiduciary duty claim: a fiduciary relationship, breach of the consequent fiduciary duty, and damages. (*Oasis West*, *supra*, 51 Cal.4th at p. 820.) First, as noted previously, the complaint alleged that Luxon had an attorney-client relationship with Sump, which created a fiduciary relationship. Second, the complaint alleged a breach of fiduciary duty. Specifically, it alleged that at a special meeting of the R&V and RFL boards at Luxon's office, Luxon "diluted Sump's voting rights in Ready for Life and R&V by conducting the meeting as if preferred stock shareholders were common stock shareholders" and "dissolved the entities." (Capitalization omitted.) As Luxon had previously represented Sump in connection with the cannabis operations that R&V and

RFL sought to conduct on the property owned by RS, these actions injuriously affected Sump on a matter in which Luxon formerly represented Sump. (*Oasis West*, *supra*, 51 Cal.4th at p. 821.) Third, the dilution of Sump's voting rights and subsequent dissolution of R&V and RFL deprived Sump of his interest in both entities, which injured him and thereby satisfied the final element of a fiduciary duty claim.

Accordingly, we conclude that the complaint alleged a valid breach of fiduciary duty claim against Luxon based on the dissolution of R&S and RFL.

### 3. *The Power of Flower Trade Show*

Plaintiffs' final fiduciary duty theory is based on allegedly false statements about Sump's honesty and ethics made to the compliance officer at the Power of Flower trade show, which led to the temporary removal of SC Bloom's products from display and sale at the event. These allegations also state a valid claim for breach of fiduciary duty against Luxon. As previously noted, the complaint alleges that Sump had a prior attorney-client relationship with Luxon. In addition, Luxon allegedly breached his continuing duty of loyalty to Sump by making false, defamatory statements about Sump. And, even though the complaint alleged that Sump was able to assuage the concerns of the event organizer and resume selling SC Bloom products at the event, it may be inferred at the pleadings stage that he lost at least some sales from SC Bloom's temporary removal from the event, which injuriously affected Sump in the legal cannabis industry in which Luxon formerly represented Sump. (See *Oasis West*, *supra*, 51 Cal.4th at p. 821.)

Thus, the complaint also alleged a valid breach of fiduciary duty claim against Luxon based on the Power of Flower trade show.

### 4. *Evidence of Damages*

Pointing to a statement that the trial court made in denying leave to amend the complaint, Luxon argues that the judgment on the fiduciary duty claims against him should be affirmed because Sump failed to present evidence raising a triable issue concerning damages. While there is evidence suggesting that Sump did not lose any

13

sales because of SC Bloom's temporary removal from the Power of Flower trade show, we do not reach this issue because Luxon failed to satisfy his initial burden on summary judgment on the issue of damages.

Summary judgment may be entered if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) However, the party moving for summary judgment bears the initial burden of demonstrating that there is no triable issue of material fact. (*Aguilar v. Atlantic Ritchfield Co.* (2001) 25 Cal.4th 826, 850.) To satisfy this burden, a defendant cannot just assert that the plaintiff does not possess evidence on an issue. (*Id*. at pp. 854-855 & fn. 23.) The defendant must present evidence that the plaintiff does not possess, and cannot reasonably obtain, such evidence, for example, by presenting deposition testimony, factually devoid discovery responses, or requests for admission. (*Id*. at p. 855; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 110.)

Luxon did not satisfy his initial burden. In moving for summary judgment, Luxon presented a separate statement of undisputed material facts asserting that "[t]here is no evidence that any of Luxon's actions caused any of the alleged harm that Plaintiffs claim to have suffered." In support of this assertion, Luxon cited several pages from Sump's deposition discussing SC Bloom's license. However, Luxon presented no evidence concerning either the dissolution of R&V and RFL or the Power of Flower trade show. In addition, in the cited deposition pages, Sump denied that the license was revoked because of an e-mail (which presumably contained Luxon's memorandum to the BCC). However, when asked whether the e-mail had any detrimental effect on his business' ability to operate, Sump replied that he "had to deal with investigators" and "with audits" and that he had "been in dispute now for three years trying to establish my authority." Thus, far from showing that Sump has no evidence of damages even with respect to the BCC memorandum, Sump's deposition shows that he has evidence that the memorandum caused disruption and inconvenience.

We therefore conclude that Luxon failed to show that he is entitled to summary judgment on Sump's fiduciary duty claims, and because those claims were validly pleaded, we conclude as well as that the trial court erred in entering judgment on those claims based on inadequacy of the pleadings.

## B. Conversion

In addition to ruling that the complaint failed to allege a valid fiduciary duty claim against Luxon, the trial court held that the complaint failed to allege a valid conversion claim against him. On appeal, Sump argues that the complaint stated a valid claim directly against Luxon for conversion of SC Bloom's license and a valid claim for conspiracy to convert his interests in R&V, RS, RFL, and the Encinal Property. As explained below, we reject both arguments.

### 1. Direct Liability

Sump contends that the complaint stated a claim for conversion directly against Luxon based on the memorandum from Luxon that allegedly prompted the BCC to revoke SC Bloom's cannabis license. There are at least two problems with this theory. First, the complaint did not allege that Luxon exercised any control, or "dominion," over the cannabis license. Second, as the complaint recognized, when Luxon sent the memorandum, Sump did not appear on the land use application for the Encinal Property and therefore SC Bloom lacked the local authority to maintain licensing. (See *Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 845 ["To prevail on a claim of conversion, the plaintiff must prove an " ' "ownership or right to possession of the property *at the time of the conversion*,' " ' " (italics added)]; *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150 ["[T]he tort of conversion is understood . . . generally as 'the wrongful exercise of dominion over personal property of another.' "].) However, we need not consider these problems. In the trial court Sump did not contend that the complaint stated a valid claim for conversion directly against Luxon—he argued only that the complaint stated a claim for conspiracy to convert— and " ' "[a]s a general rule, theories not raised in the trial

15

court cannot be asserted for the first time on appeal . . . ." ' " (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)

### 2. *Conspiracy*

Sump also argues that the complaint alleged a valid claim for conspiracy to convert his interests in R&V, RFL, RS, and the Encinal Property. As explained below, we are not persuaded.

"The elements of civil conspiracy are: (1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct." (*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 312, fn. 7.) " '[B]are legal conclusions, inferences, generalities, and conclusions are insufficient' " to plead the formation and operation of a conspiracy. (*State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 419 (*Metz*).) Instead, a party must allege "the nature of [the] agreement" between the parties and how the conspiracy operated. (See *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1173 (*Daniels*), disapproved on other grounds in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 948, fn. 12.) Thus, as multiple decisions have recognized, a party cannot adequately plead the formation and operation of a conspiracy by merely alleging a conspiracy to achieve an object and some general means of doing so such as deception or concealment. (*Daniels*, at p. 1173 [holding insufficient allegation that "respondents 'agree[d] . . . to deceive [appellants] into participating in the loan modification processes' "]; *Metz*, at pp. 411, 419 [holding insufficient allegation that respondent "conspire[d] with unnamed defendants to deprive policyholders of the full amount of their insurance benefits" and "to conceal [defendant's] improper loss valuations"]; *117 Sales Corp. v. Olsen* (1978) 80 Cal.App.3d 645, 648, 650 [holding insufficient allegation that cross defendant " 'planned, agreed and conspired to interfere with and have interfered with Plaintiff's prospective business advantage by wrongfully casting disrepute on and impairing [cross defendant's] business good will and business

16

reputation in the San Diego community' " by filing a " 'malicious,' 'nonmeritorious' small claims lawsuit without probable cause"].)

Sump's complaint did not adequately allege the formation and operation of a conspiracy. Sump alleged a conspiracy to accomplish an object: He alleged that Luxon and other defendants "conspired to defraud and deprive Mr. Sump's ownership" in the Encinal Property and "the voting and membership interest" of RS and RLF, and that "Defendants knew other Defendants herein named planned to perpetrate all or some of the wrongful acts complained of, and that Defendants agreed with other named Defendants and intended that the wrongful acts complained of, be committed." (Capitalization omitted.) In addition, the complaint alleged that Ready sought to remove Sump's membership and voting interests and to convert his cannabis business license "while conspiring with the other named Defendants." However, there is no allegation concerning the nature of the agreement between the conspirators, how the conspiracy operated, or even when it operated. Indeed, the complaint did not even allege a generalized means such as deception or concealment. As a consequence, Sump failed to allege the formation and operation of a conspiracy.

Indeed, this District has rejected more detailed conspiracy allegations. In *Daniels*, plaintiffs sued a loan servicer and several other entities, claiming the loan servicer misrepresented that it would approve a loan modification if plaintiffs fell behind on payments. (*Daniels, supra*, 246 Cal.App.4th at pp. 1157, 1159.) The complaint alleged that the defendants " 'agree[d] . . . to deceive [plaintiffs] into participating in the loan modification process.' " (*Id.* at p. 1173.) Thus, the complaint alleged both an object of the conspiracy (inducing plaintiffs' participation in the loan modification process) and a general means of accomplishing that object (deception). Nonetheless, *Daniels* concluded that the plaintiffs failed to state a valid conspiracy claim because there were "no factual allegations about the nature of the agreement," and also because the plaintiffs did "not

17

allege that [defendants] agreed to defraud them *before* the alleged misrepresentations were made" and there was no basis for inferring that defendants had done so. (*Ibid.*)

This case is indistinguishable. Here, as in *Daniels*, the complaint alleged a conspiracy to accomplish an object (converting Sump's interests in various entities and the SC Bloom license), but there were no allegations concerning the nature of the agreement between the alleged conspirators, much less how or when Luxon joined in the conspiracy. In addition, as in *Daniels*, there were no allegations concerning the timing of the agreement, nor any basis for inferring that the agreement was made before the misconduct at the heart of the conspiracy. Indeed, the allegations here are even less detailed than in *Daniels*: While the plaintiffs in *Daniels* alleged an agreement on a general means of accomplishing the object of the conspiracy—deceiving the plaintiffs into participating in the loan modification process (*Daniels*, *supra*, 246 Cal.App.4th at p. 1173)—here, Sump has not even alleged a general means. Consequently, even more clearly than in *Daniels*, the conspiracy allegations here are inadequate.

The Supreme Court's decision in *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26 (*Quelimane*) does not suggest otherwise. In *Quelimane*, the plaintiffs claimed that title insurers conspired to refuse to sell title insurance on real property acquired in tax sales (*id*. at pp. 35-36), and the Supreme Court held that plaintiffs adequately pleaded the formation and operation of this conspiracy by alleging that the insurers " 'engaged in a general and concerted refusal to sell title insurance' " (*id*. at p. 47). This ruling is consistent with our conclusion that Sump failed to allege a valid conspiracy claim. Unlike Sump, the plaintiffs in *Quelimane* did not merely assert a conspiracy to accomplish an object. They alleged an agreement to engage in specific conduct: refusing to sell title insurance for properties acquired in tax sales. In addition, because the plaintiffs alleged specific instances in which the conspirators jointly refused to issue title insurance (*id*. at p. 35), in *Quelimane*, unlike here, it may be inferred that the conspiracy began before those refusals.

18

We therefore conclude that Sump failed to adequately allege a conspiracy to convert his property and that judgment was properly entered on his conversion claim against Luxon.

## C. Misrepresentation/Deceit

In addition to claiming that Luxon was part of a conspiracy to convert his property, Sump contends that Luxon was part of a conspiracy to defraud him. However, in arguing that there was a conspiracy to defraud, Sump relies on the same general allegations of conspiracy upon which he relied in asserting the conversion conspiracy. For the reasons discussed above, these allegations fail to properly state a conspiracy claim. Accordingly, we conclude that judgment was properly entered on Sump's fraud claim against Luxon.

## D. Leave to Amend

At oral argument on Luxon's motion for summary judgment, Sump requested leave to amend his complaint to cure any defects in it. The trial court denied this request for three reasons: (1) Because there were so many deficiencies in the complaint, it was unclear that an amendment would cure all of them; (2) Sump failed to make a sufficient factual showing to overcome summary judgment; and (3) "it would be 'patently unfair' to permit a pleading amendment at this incredibly late stage of the proceedings." Sump contends that, in making this ruling, the trial court abused its discretion. However, trial courts are entrusted with " ' "wide discretion" ' " in considering amendments to the pleadings, and " ' "the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown." ' " (*Holguin Family Centurs, LLC v. County of Ventura* (2024) 104 Cal.App.5th 157, 179.) There was no such abuse here. As explained below, Sump's delay in seeking to amend his complaint alone justified denial of his request.

As Sump noted, leave to amend generally should be liberally granted. (See, e.g., *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280 (*Falcon*).)

19

However, "unwarranted delay in seeking to amend may be considered by the trial court when ruling on a motion for leave to amend." (*Ibid.*) Moreover, such delay is especially important where, as here, a plaintiff seeks leave to amend his or her complaint after a summary judgment motion because it is " 'patently unfair' " to permit plaintiffs to defeat summary judgment by allowing them to present a " ' "moving target" unbounded by the pleadings.' " (*Ibid.*) Accordingly, trial court orders denying requests for leave to amend brought after a summary judgment motion have been repeatedly upheld on appeal. (*Id.* at pp. 1280-1282; see also *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 225; *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176; *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746; *Record v Reason* (1999) 73 Cal.App.4th 472, 486; *Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1159.)

Here, the trial court had especially strong grounds for denying Sump's request for leave to amend. Luxon's motion for summary judgment was not filed until May 2023, three years after the complaint was filed. In addition, Sump did not seek leave to amend in his opposition memorandum. Instead, he waited to request leave to amend until the hearing on the motion for summary judgment in September 2023, four months after the summary judgment motion was filed, and less than 40 days before trial was scheduled to begin. Moreover, Sump did not file a motion for leave, submit a proposed amended complaint, or even offer an explanation for his delay. The trial court acted well within the scope of its discretion in denying this belated, unexplained, and unsupported request.

Sump asserts that in most cases in which courts have denied leave to amend after a motion for summary judgment was filed the proposed amendment sought to add an entirely new theory of liability or new claim. He also asserts that, even when a summary judgment motion has been filed, leave to amend should be liberally granted "so long as it appears reasonably possible for the plaintiff to truthfully allege facts curing the defect." We need not consider whether these assertions are correct because Sump has not shown that it is reasonably possible for him to allege facts curing the defects in his conspiracy

20

allegations.  In his briefing on appeal, Sump argues that he could allege facts curing the defects in his fiduciary duty and fraudulent misrepresentation claims, not his conspiracy allegations.  Moreover, while Sump argued in his supplemental brief that he presented evidence of misconduct by Luxon that furthered the conspiracy, he did not point to any evidence that Luxon entered into a conspiracy to defraud him or to convert his property.

Accordingly, we find no abuse of discretion in the trial court's refusal to grant Sump leave to amend.

### III. DISPOSITION

The judgment dated February 27, 2024 is reversed, and this matter is remanded to the trial court with directions to reinstate the second cause of action against Luxon.  The trial court's rulings that the third and fifth causes of action fail to state valid claims are affirmed.  The court expresses no opinion on whether Sump has raised triable issues concerning either breach of fiduciary duty or punitive damages.  The parties shall bear their own costs on appeal.

_____
BROMBERG, J.



WE CONCUR:




_____
DANNER, ACTING P. J.




_____
WILSON, J.




*Sump et al. v. Luxon et al.*
H052012